798 P.2d 200

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Ralph PACHECO, Defendant–Appellant.**

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Joe BACA, Defendant–Appellant.**

**Nos. 11232, 11214.**

Court of Appeals of New Mexico.

June 19, 1990.

Certiorari Denied Sept. 6, 1990.

Hal Stratton, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for the State in No. 11232.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for Ralph Pacheco.

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for the State in No. 11214.

Winston Roberts–Hohl, Santa Fe, for Joe Baca.

## OPINION

MINZNER, Judge.

Defendant Ralph Pacheco appeals from his convictions for false imprisonment and kidnapping. He raises four issues on appeal: (1) whether it was error to admit an out-of-court statement given by Michael Campos; (2) whether it was error to admit evidence concerning wrongdoings allegedly committed by defendant; (3) whether it was error not to sever defendant's trial from that of co-defendant, Joe Baca (Baca); and (4) whether defendant was denied effective assistance of counsel.

Defendant Joe Baca appeals from his convictions for kidnapping, false imprisonment, and criminal sexual penetration. He raises six issues on appeal. Defendant alleges error based on: (1) admission of an out-of-court statement given by Michael Campos; (2) failure to sever his trial from that of co-defendant, Ralph Pacheco; (3) denial of his request for an out-of-state-witness subpoena; (4) failure to instruct the jury on the voluntariness of defendant's statement; (5) limitation of his inquiry into the effects on the victim of the alleged rape; and (6) denial of effective assistance of counsel.

Because a common issue is dispositive, we have consolidated the two cases. We reverse and remand for a new trial on the ground that the district court erred in admitting Campos's out-of-court statement. We also address the severance arguments that were preserved and are likely to arise on remand. In view of our disposition, we do not address the remaining issues.

## DISCUSSION.

The testimony was conflicting regarding the details of the events alleged to have taken place on the night in question. The basic testimony was that defendants picked up the victims, who were walking home from a local bar. Defendants drove around Espanola with the victims, C.D. and J.D., who were mother and daughter. The four went to the victims' house, where defendants and C.D. continued to drink in the living room, while J.D. slept in her bedroom. Testimony was presented that defendants tied up C.D. in the living room. Baca forced J.D. to undress in her bedroom, and then forced her to engage in sexual intercourse and fellatio. Testimony was also presented that defendants forced J.D. to leave with them in their truck, and they then drove to Ojo Caliente. Further testimony was presented that Pacheco was eventually dropped off in Ojo Caliente, and Baca pulled off the road on the way back to Espanola and again forced J.D. to engage in sexual intercourse with him. J.D. was dropped off at the Lucero Center in Espanola, and she went home from there.

Pacheco did not testify at trial. Baca testified that J.D. voluntarily accompanied Pacheco and defendant to Ojo Caliente,

where Pacheco was dropped off. Baca's testimony was that he and J.D. had consensual sexual intercourse when he pulled off the road on the way back to Espanola because J.D. was kissing him. Serology evidence established that semen found in J.D.'s vagina and on her underwear was consistent with Baca being the donor.

At trial, Baca was asked on cross-examination whether he told a friend, Michael Campos, that he had partied with J.D., Dolores Madrid, and Pacheco the night of the incident. Baca denied telling Campos this. The state sought to admit an out-of-court statement given by Campos to impeach Baca. Campos's statement was also offered to show that both defendants had attempted to develop a cover-up story to protect themselves, thereby supporting an inference that they were guilty of the crimes charged. The trial court admitted a limited portion of the statement, wherein Campos stated that defendants had told him they partied with "that girl and Dolores," under SCRA 1986, 11-804(B)(6).

Dolores Madrid testified that she knew defendants, but that she had never partied with them. Madrid further testified that she saw defendants washing their truck in Espanola the weekend of the incident. She testified that they wanted her to be a witness for them and that they said they did not touch the girls.

■ The trial admitted Campos's statement under Rule 11-804(B)(6). Defendants argue that reliance on the exception was error and violated their constitutional right to confront the witnesses against them. We agree. Rule 11-804(B)(6) is not applicable. The reasons it does not apply support a conclusion that the admission of Campos's statement violated defendants' constitutional right of confrontation.

■ We first note that if Campos had been present and had testified at trial, there would be no hearsay problem, even though his testimony related to out-of-court statements by defendants. There are two reasons why in-court testimony by Campos to the effect that defendants had told him that they were with Dolores on the night of the alleged rape would not have been hearsay. First, the out-of-court statements were statements by opposing parties. Such declarations are not hearsay. *See* SCRA 1986, 11-801(D)(2)(a). Also, the statements by defendants to Campos were not offered by the prosecutor to prove the truth of the matters asserted. R. 11-801(C). On the contrary, the purpose of the prosecutor was to show that defendants had concocted a false cover story; such attempts to conceal the facts are evidence of guilt. *Cf.* SCRA 1986, 14-5003, -5004.

The hearsay problem is that Campos himself did not testify, yet his out-of-court statement to the prosecutor was offered for its truth. The prosecutor wished to prove that defendants had in fact made the alleged statement to Campos.

Rule 11-804(B)(6) is applicable when the declarant is unavailable. The trial court found that the declarant, Campos, was unavailable, and this finding was not challenged by the parties below, nor is it challenged on appeal. The rule allows into evidence:

(6) **Other exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that

(a) the statement is offered as evidence of a material fact;

(b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(c) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

R. 11-804(B)(6).

■ The "catch-all exception" must be applied stringently in criminal cases be-

cause of confrontation concerns. *State v. Barela,* 97 N.M. 723, 643 P.2d 287 (Ct.App. 1982). Guarantees of reliability are necessary to guard against admitting hearsay, which is not subject to the usual safeguard of cross-examination at trial. *See State v. Earnest,* 106 N.M. 411, 744 P.2d 539, *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987).

In *State v. Taylor,* 103 N.M. 189, 704 P.2d 443 (Ct.App.1985), this court identified the four primary dangers inherent in hearsay which a court must address to determine whether statements have the " 'equivalent circumstantial guarantees of trustworthiness' " required by the catch-all exceptions. *Id.* at 197, 704 P.2d at 451 (quoting prior R. 804(b)(6)). They are ambiguity, lack of candor, faulty memory, and misperception.

Although the catch-all exception applicable when declarants are available, *see* SCRA 1986, 11–803(X), is identically worded to the catch-all exception applicable when declarants are unavailable, *see* Rule 11–804(B)(6), each catch-all exception refers to "equivalent" circumstantial guarantees of trustworthiness. Since the list of exceptions that are applicable when a declarant is available differs from those that are applicable when a declarant is unavailable, it is reasonable to view the term "equivalent" in each catch-all exception as referring to the particular list of exceptions it follows.

Since Rule 11–804(B)(6) follows a short list of hearsay exceptions, we believe the catch-all exception on which the trial court relied should be interpreted to require circumstantial guarantees of trustworthiness that are equivalent to the exceptions in the "short list." The specific hearsay exceptions of Rule 11–804(B) include those for former testimony, statements of recent perception, dying declarations, statements against interest, and statements of family background or history. Each of these kinds of statements is admissible, though hearsay, because the circumstances in which the statements are made are indicative of. a strong propensity for truthfulness, because there has been a previous opportunity for cross-examination, or because the contents of the statements themselves are of such a nature that one reasonably could conclude that the speaker was telling the truth. *United States v. Bailey,* 581 F.2d 341, 348–49 (3rd Cir.1978). In this case, the state has pointed to no specific circumstances that indicate reliability. Rather, the state relies on the probability the statement was true and in particular on the fact that Campos's out-of-court statement was consistent with Madrid's testimony. That is not enough.

The state bases part of its argument for reliability upon Baca's attorney's statement that Campos was asked to lie. The state appeared to argue that defense counsel in effect stipulated to Campos's reliability. The record does not indicate that Pacheco's attorney made any concessions on this issue. Further, it is clear from the record that Baca's attorney did not concede the truthfulness or accuracy of Campos's statement that "they" (as opposed to just Pacheco) had said that Dolores was with them.

There is some dispute whether analysis under the residual exceptions allows consideration of corroborative evidence. Some courts have said that the probability that the statement is true, as shown by corroborative evidence, is not a consideration relevant to its admissibility under a residuary exception to the hearsay rule. *See Huff v. White Motor Corp.,* 609 F.2d 286 (7th Cir. 1979). In *Huff,* the Seventh Circuit reasoned that the presence or absence of corroborated evidence is irrelevant in the case of any of the specifically enumerated exceptions, and, in applying the catch-all exception, which requires that the guarantees of trustworthiness be equivalent to those supporting specific exceptions, the presence or absence of corroborative evidence would seem to be equally irrelevant. The majority view is to the contrary. *See State v. Allen,* 157 Ariz. 165, 755 P.2d 1153 (1988) (En Banc); *United States v. Bailey.* In most jurisdictions, the presence of corroborative evidence is considered relevant in evaluating admissibility under the residual exceptions. *See State v. Allen.*

However, that

is not to say that corroborative evidence is either a necessary or sufficient condition to admissibility under the residual exceptions. It is neither. Such evidence is useful only when the statements exhibit some degree of reliability in the first instance, *i.e.*, in the circumstances in which the declarant made the statement. *See State v. Taylor*, 103 N.M. 189, 199, 704 P.2d 443, 453 (App.1985) (corroboration evidence alone will not lend particular trustworthiness to the child's statements); *State v. Slider*, 38 Wash.App. 689, 694, 688 P.2d 538, 543 (1984) (same). *See also, State v. Ryan*, 103 Wash.2d 165, 172, 691 P.2d 197, 204 (1984) ("Adequate indicia of reliability must be found in reference to circumstances surrounding the making of the out-of-court statement, and not from the subsequent corroboration of the criminal act.").

*State v. Allen*, 157 Ariz. at 177, 755 P.2d at 1164–65.

Here, the statement was obtained during questioning by the state with respect to the offenses with which defendant was charged. There is nothing particular about the circumstances in which Campos made the statement that suggests that he probably was telling the truth, and three of the four dangers to which *Taylor* refers (all but misperception) are present in the statement of the circumstances in which he made it. As for ambiguity, Campos's statement referred to what "they" told him. Witnesses often say "they" to mean "someone—I can't remember who." Without cross-examination, defendants could not explore the possibility that only one allegedly made the statement. The use of this ambiguous word may also suggest insufficient memory as to who said what to Campos. Moreover, the risk that Campos was not candid is significant. Campos was trying to protect his friends. He gave a false story about seeing defendants himself, and then to buttress his story, he added that his friends had described their evening to him in a consistent fashion. Thus, Campos's decision to lie about what he had observed with his own eyes gave him a motive to corroborate his statement

by misrepresenting what defendants had told him. Finally, the only corroboration of Campos's statement was Madrid's testimony, which was of questionable probative value.

We conclude that the trial court's decision to allow the statement into evidence was error. The statement was not admissible under Rule 11–804(B)(6) because it lacked any circumstantial guarantees of trustworthiness. Because it lacked those guarantees, it lacked sufficient indicia of reliability to satisfy confrontation concerns. Thus, admission of the out-of-court statement denied defendants their constitutional right to confront Campos. *See State v. Earnest.* We next address the issue of whether the admission of the statement was harmless error. *See State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975).

One could argue that the admission of Campos's statement was harmless as to Pacheco, because Campos's statement was merely cumulative of other probative testimony that Pacheco attempted to establish a false alibi. *See* M. Field, *Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale*, 125 U.Pa.L.Rev. 15 (1976). But New Mexico has not adopted Professor Field's cumulative evidence test. The supreme court has stated the rule as follows:

> For an error by the trial court to be considered as harmless, there must be: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Moore*, 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). As an intermediate appellate court, we apply the supreme court's precedent. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). Applying the *Moore* test, there clearly was not harmless error. The record reflects both exculpato-

ry testimony and a number of discrepancies in the state's evidence that could have led to an acquittal.

### SEVERANCE.

Both defendants argue that the trial court abused its discretion by not allowing severance of the trials. Defendant Pacheco did not preserve the issue, because he never objected to a joint trial. *See State v. Gutierrez*, 91 N.M. 54, 570 P.2d 592 (1977). However, defendant Baca made a motion to sever before the second jury was sworn, and we address his claim.

■ The standard of review for denial of a motion to sever is abuse of discretion. *State v. Shade*, 104 N.M. 710, 726 P.2d 864 (Ct.App.1986). To succeed in proving error, the defendant must make a showing that he suffered prejudice by the joinder. *Id.* The pertinent rule here is SCRA 1986, 5–203:

B. **Joinder of defendants.** Two or more defendants shall initially be joined in the same complaint, indictment or information:

(1) when each of the defendants is charged with accountability for each offense included;

(2) when all of the defendants are charged with conspiracy and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy; or

(3) when, even if conspiracy is not charged and not all of the defendants are charged in each count, the several offenses charged:

(a) were part of a common scheme or plan; or

(b) were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of others.

C. **Motion for severance.** If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in any complaint, indictment or information, or by joinder for trial, the court may order separate trials of offenses, grant a severance of defendants, or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance, the court may order the prosecutor to deliver to the court for inspection in camera any statements or confessions made by the defendants which the prosecution intends to introduce in evidence at the trial.

■ Whether severance should be granted is a matter entrusted to the sound discretion of the trial court. *State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App.1983). Baca and Pacheco were charged with kidnapping and false imprisonment based on acts allegedly committed together by the two of them. Under these circumstances, it was proper to try defendants together. *See* R. 5–203(B)(3)(b).

Baca contends it was error not to grant his motion for severance because evidence was presented at the joint trial against Pacheco that the state would not have been permitted to present against Baca in a separate trial. He complains about Madrid's testimony in particular.

*State v. Benavidez*, 87 N.M. 223, 531 P.2d 957 (Ct.App.1975), on which Baca relies, states that it is an abuse of discretion to refuse a motion for severance when evidence would be brought in at a joint trial that would be inadmissible against the movant at a separate trial. The proposition cited in *Benavidez* is based on a rule that allowed separate trial by right if the court found that the prosecution might "present evidence against a joint defendant, other than reputation or character evidence, which would not be admissible in a separate trial of the moving defendant." NMSA 1953, § 41–23–34(a) (2d Repl.Vol. 6 (Supp.1973)). That provision no longer exists. The new rule cited above no longer contains a provision for separate trials by right. The rule does require that a movant show prejudice in order to succeed.

At the motion hearing, Baca's attorney maintained that Baca was not involved in the cover-up and argued that Madrid and Campos's testimony could wrongfully implicate him in it. The prosecutor argued that Madrid said that "they" approached her and that other evidence showed that Baca adopted the statements Pacheco made

to Madrid. We have ruled that Campos's statement was not admissible against either defendant. As to Madrid's testimony, the question is whether Baca's testimony actually implicated him as well as Pacheco. As indicated in our discussion of Campos's statement, Madrid's use of the word "they" was an ambiguous reference, which may not have been intended to implicate Baca in the cover-up. However, on the record made at the hearing on the pretrial motion to sever, we cannot say that the trial court erred in denying the motion. On remand, if Baca again moves to sever, the trial court will have the benefit of Madrid's trial testimony, as well as any additional testimony on voir dire.

Baca's attorney also argued that Pacheco's inappropriate contact with a juror could prejudice Baca in a joint trial but could not be used against him in a separate trial. However, the state agreed that it would not introduce evidence of the contact.

Defendant also argues that if a severance had been granted he could have called Pacheco as a witness and cross-examined him. We find this argument to be equally without merit. Even if defendant's trial had been severed from Pacheco's, charges presumably would have still been pending against Pacheco. Therefore, it is reasonable to assume from the fact that Pacheco did not take the stand in his own defense at the joint trial that, if called to testify by defendant at a separate trial, Pacheco would simply have asserted his right against self-incrimination and refused to testify. *See State v. Crislip,* 110 N.M. 412, 796 P.2d 1108 (Ct.App.1990) (co-defendant convicted at prior trial could invoke privilege against self-incrimination pending appeal). Based on the above, we cannot say the trial court abused its discretion in failing to grant defendant's motion for severance. *See State v. Burdex.*

CONCLUSION.

We conclude the trial court did not err in failing to sever Baca's trial from that of Pacheco, but that it was reversible error to admit Campos's statement as to either de-

fendant. The convictions are reversed and the causes are remanded for a new trial.

ALARID and HARTZ, JJ., concur.