824 P.2d 1023

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Pedro GONZALES, Sr., Defendant–
Appellant.**

No. 18429.

Supreme Court of New Mexico.

Jan. 6, 1992.

As Amended on Denial of Rehearings
Feb. 6, 1992.

Ellen Bayard, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendant-appellant Pedro Gonzales appeals from his conviction of and sentencing on charges of first degree murder, shooting into an occupied motor vehicle, and felon in possession of a firearm. We affirm in part and reverse in part.

The incidents culminating in the death of Mike Sandoval stem from a history of animosity between Ben Rivera, and defendant and his family. Sandoval was a passenger in a truck driven by Rivera and was killed by shots fired into the truck while driving past the Gonzales residence. The fatal wound was caused by a bullet fired from a rifle belonging to Yolanda Gonzales, defen-

dant's wife. Also charged in the shooting was defendant's son, Martin Gonzales.

Defendant raises the following issues on appeal: (1) Whether it violates double jeopardy principles (a) to enter judgment and sentence on the conviction for shooting into a motor vehicle, and (b) to enhance the sentence for felon in possession of a firearm based on the habitual offender statute; (2) whether the court erred when it admitted preliminary hearing testimony; (3) whether prosecutorial misconduct denied defendant a fair trial; and (4) whether defendant's right to effective assistance of counsel was violated.

## I. DOUBLE JEOPARDY.

Defendant raises two double jeopardy arguments: (1) Whether his convictions and sentences for both shooting into an occupied motor vehicle under NMSA 1978, Section 30-3-8 (Cum.Supp.1991), and first degree murder under NMSA 1978, Section 30-2-1 (Repl.Pamp.1984), violate double jeopardy principles; and (2) whether the use of the same prior felony to prove both the crime of felon in possession of a firearm and his status as an habitual offender violates double jeopardy. We discuss these contentions separately.

### A. *Shooting at an Occupied Motor Vehicle.*

Defendant contends that his convictions for both shooting into an occupied vehicle and first degree murder is a violation of double jeopardy principles. His initial argument was based on our decision in *State v. Pierce,* 110 N.M. 76, 792 P.2d 408 (1990), in which we vacated a conviction on lesser included offenses when the defendant's actions constituted one criminal act. In their initial briefs, defendant and the State agreed that defendant's actions constituted one criminal act and that, under *Pierce,* the conviction for the lesser offense—shooting into an occupied vehicle—merged into the greater offense and should be vacated. However, we recently clarified the law surrounding double jeopardy in *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991). In response to *Swafford,* we

requested additional briefing on the double jeopardy question. The State now contends that the two offenses do not merge and that defendant may be punished for each offense.

■ At issue in this case is that category of double jeopardy that "protects against multiple punishments for the same offense." *Id.* at 7, 810 P.2d at 1227 (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *see also Pierce,* 110 N.M. at 84–85, 792 P.2d at 416–17. The question of whether convictions under several statutes constitute the same offense for double jeopardy purposes is a matter of determining the legislative intent. *Swafford,* 112 N.M. at 8, 810 P.2d at 1228 ("polestar guiding courts is the legislature's intent to authorize multiple punishments for the same offense"); *see also Herron v. State,* 111 N.M. 357, 359, 805 P.2d 624, 626 (1991); *Pierce,* 110 N.M. at 85, 792 P.2d at 417. Where a defendant "is convicted of one or more offenses which have merged into the greater offense he may be punished for only one." *Pierce,* 110 N.M. at 86–87, 792 P.2d at 418–19. Concurrent sentencing does not render multiple convictions for the same offense harmless. *Pierce,* 110 N.M. at 87, 792 P.2d at 419.

■ Under *Swafford,* the test to determine legislative intent to punish is: (1) "whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes," and (2) if so, did the legislature "intend[ ] to create separately punishable offenses." 112 N.M. at 13, 810 P.2d at 1233. The double jeopardy clause prohibits multiple punishment only if the first part of the test is answered affirmatively and the second part of the test is answered negatively. *Id.*

In the instant case, we find that defendant's conduct leading to his multiple convictions was unitary. As we explained in *Swafford,*

> [t]he conduct question depends to a large degree on the elements of the charged offense and the facts presented at trial. * * *

If two events are sufficiently separated by either time or space * * *, then it is a fairly simple task to distinguish the acts. * * * [T]he task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable.

*Id.* at 13–14, 810 P.2d at 1233–34. In defendant's case, the facts presented at trial established that defendant fired multiple gun shots into Rivera's truck in rapid succession. Because the shots were not "separated by either time or space," we agree with the trial court that defendant committed one criminal act.

■ Because defendant's conduct was unitary, we must examine whether the legislature intended to create two separately punishable offenses. Under *Swafford,* our first inquiry is whether the legislature has expressly provided for multiple punishment for unitary conduct. *Id.* at 14, 810 P.2d at 1234. In this case, the statutes under which defendant was convicted do not expressly provide for multiple punishment for unitary conduct. *Compare* NMSA 1978, § 30-2-1 (Repl.Pamp.1984), *with* NMSA 1978, § 30-3-8 (Cum.Supp.1991).

Where, as here, the legislature did not expressly provide for multiple punishments for unitary conduct, we must determine legislative intent by applying the test enunciated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The *Blockburger* test requires an analysis of the elements of each statute to determine "whether each provision requires proof of a fact the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Clearly, each statute in question in this appeal requires proof of an element that the other statute does not require. The murder statute, NMSA 1978, Section 30-2-1, requires proof of the unlawful killing of a human being which need not be accomplished by shooting at an occupied motor vehicle. The shooting at an occupied motor vehicle statute, NMSA 1978, Section 31-3-9, requires proof of discharging a firearm at an occupied vehicle but does not require the killing of a human

being. Thus, the greater offense—murder—does not subsume the lesser offense—shooting into an occupied vehicle—because each requires proof of an element absent in the other. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

■ Because each statute requires proof of an element absent in the other, we presume that the legislature intended to punish each offense separately. *Id.* at 14, 810 P.2d at 1234. However, this presumption can be rebutted by showing that the legislature had a contrary intent. To determine legislative intent, we look to the "language, history, and subject of the statutes." *Id.* Legislative intent may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors. *Id.* at 14-15, 810 P.2d at 1234-35.

In the instant case, an examination of the factors set out in *Swafford* convinces us that the legislature intended separate punishment for an act that violates both statutes. The murder statute is designed to avoid the unlawful killing of a person. In contrast, the shooting into an occupied vehicle statute is more narrowly designed to protect the public from reckless shooting into a vehicle and the possible property damage and bodily injury that may result. While death may occur as a result of shooting into an occupied vehicle, we must strictly construe the social purpose protected by each statute. *Id.* Thus, the statutes protect different social interests. In addition, while the statutes in question here may be violated together, they are not necessarily violated together. Further, although the murder statute extracts a greater penalty than the shooting into an occupied vehicle statute, the murder statute does not incorporate the same elements as the shooting into an occupied vehicle statute. Finally, punishment for a violation of either statute is not enhanced for a violation of the other statute. *See id.* at 15, 810 P.2d at 1235. Therefore, we find that the legislature intended for separate punishment for unitary conduct that violated both statutes. Thus, there is no violation of double jeopardy principles for defendant's punishment under both of the statutes in question here.

### B. Enhancement of Defendant's Sentence as Felon in Possession of a Firearm.

Defendant contends that the use of the same prior felony to prove both the crime of felon in possession of a firearm and appellant's status as an habitual offender violates double jeopardy principles. Because the State conceded that this enhancement was improper under *State v. Haddenham*, 110 N.M. 149, 793 P.2d 279 (Ct.App. 1990), we vacate the enhancement provision of defendant's sentence and remand for resentencing. *See also State v. Castrillo*, 112 N.M. 766, 819 P.2d 1324 (1991).

## II. ADMISSION OF PRIOR TESTIMONY.

### A. Did the Admission of Carrillo's Preliminary Hearing Testimony Violate the Confrontation Clause?

■ Defendant contests the admission at trial of testimony made at a preliminary hearing by Judy Carrillo, Martin Gonzales's wife. At trial Carrillo exercised her privilege not to testify. U.S. Const. amend. V. The court found her unavailable and admitted the prior testimony.

There is no question that Carrillo was "unavailable" to testify under SCRA 1986, 11-804(A). *See McGuiness v. State*, 92 N.M. 441, 443-44, 589 P.2d 1032, 1034-35 (1979). Defendant contends, however, that he did not have the opportunity and motive to cross-examine Carrillo and develop her testimony. He asserts that because the relevant issues had changed between the preliminary hearing and trial, his motivation to cross-examine Carrillo had also changed. At the hearing, Carrillo's testimony was consistent with defendant's self-defense theory; however, in her absence at trial, identification became the issue. Thus, the motive to develop her testimony had changed. The admission of the prior testimony left defendant unable to cross-examine the witness regarding her identifi-

cation of him as having fired on the truck, the issue he wished to pursue at trial. In fact, no cross-examination by the defense was undertaken. The court below overruled the objection to admission of the prior testimony, deeming that any limits on cross-examination resulted from a change in trial strategy.[1]

In *State v. Massengill*, 99 N.M. 283, 657 P.2d 139 (Ct.App.1983), the court considered a similar argument by a criminal defendant. The *Massengill* court noted that one purpose of a preliminary hearing is to preserve evidence. *Id.* at 284, 657 P.2d at 140.[2] The question of whether preliminary hearing testimony should be admitted at trial when the witness was unavailable was not whether a defendant had the *same* motive to cross-examine and develop testimony at the hearing and at trial, but whether the defendant had a *similar* motive. *Id.* at 285, 657 P.2d at 141. Focusing on the defendant's decision to forego examination in certain areas, the court determined that the defendant had made a tactical choice. The motive to cross-examine the witness at the preliminary hearing was similar to the motive to cross-examine at trial because in both instances, the issues were whether a crime was committed and whether the defendant had committed the crime. *Id.* In other words, *Massengill* set forth a per se rule that absent extraordinary circumstances preliminary hearing testimony may be admitted at trial if the witness is unavailable because the motive to cross-examine is similar. *See also State v. Martinez*, 102 N.M. 94, 96, 691 P.2d 887, 889 (Ct.App.1984); *cf. State v. Slayton*, 90 N.M. 447, 564 P.2d 1329 (Ct.App.1977) (unavailable witness's prior testimony concerning insanity inadmissible as to defendant's guilt where defendant had no motive to cross-examine at first trial because of arrangement between counsel). As the following discussion indicates, the instant case does not require us

to deviate from the rule articulated in *Massengill.*

■ The issue in the instant case is presented to us as an interplay of SCRA 1986, 11–804(B)(1), and the constitutional requirement of the confrontation clause. U.S. Const. amend. VI. If a hearsay statement fits into a well-established hearsay exception, the indicia of reliability that make an out-of-court statement trustworthy can be inferred and constitutional problems avoided. *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *see Mancusi v. Stubbs*, 408 U.S. 204, 213–16, 92 S.Ct. 2308, 2313–14, 33 L.Ed.2d 293 (1972). Thus, if the testimony was admitted in accordance with Rule 11–804, the constitutional requirements of the confrontation clause have been met.

■ The United States Supreme Court, while not addressing the exact issue presented, has indicated that testimony from a preliminary hearing is admissible at a subsequent trial when the hearing was held under circumstances akin to a trial. The preliminary hearing is akin to a trial where the witness is under oath, the defendant is represented by counsel, and the defendant is given the opportunity to cross-examine the witness. *California v. Green*, 399 U.S. 149, 165, 90 S.Ct. 1930, 1938, 26 L.Ed.2d 489 (1970); *cf. Pointer v. Texas*, 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965) (distinguishing inadmissible prior testimony when defendant not represented at preliminary hearing from admissible prior testimony when defendant represented by counsel and given adequate opportunity to cross-examine). However, if the circumstances and facts of a particular case indicate that there was a real difference in motive or other limitation on meaningful cross-examination, the testimony should not be admitted. *See Slayton*, 90

---

1. In *State v. Gonzales*, 110 N.M. 166, 793 P.2d 848 (1990), we considered the appeal of Martin Gonzales, defendant's son and codefendant, and we affirmed the admission of Carrillo's testimony against Martin Gonzales.

2. The opportunity to preserve testimony through depositions, *see* SCRA 1986, 5–503, does not diminish the importance of testimony preserved at a preliminary hearing.

N.M. at 450, 564 P.2d at 1331–32 (unavailable witness's prior testimony regarding defendant's insanity not admissible at trial on defendant's guilt because similar motive to cross-examine was absent); *see also Barber v. Page*, 390 U.S. 719, 725–26, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) (prior testimony of witness not admissible where witness was not "unavailable" and defendant had no meaningful opportunity to cross-examine witness at preliminary hearing).[3]

The distinction between admissible and inadmissible prior testimony was effectively characterized in *United States v. Allen*, 409 F.2d 611 (10th Cir.1969). In *Allen*, the court considered whether preliminary hearing testimony should be admissible at trial when the issue at the preliminary hearing is probable cause, while at trial the issue is guilt or innocence with the accompanying motivation for more probing cross-examination. As the *Allen* court explained,

> We believe that the test is the opportunity for full and complete cross-examination rather than the use which is made of that opportunity. At the [preliminary] hearing * * *, the defendant and his counsel were confronted by the witnesses who testified under oath and were subjected, without limitation, to extensive cross-examination. The extent of cross-examination, whether at a preliminary hearing or at a trial, is a trial tactic. The manner of use of that trial tactic does not create a constitutional right. To paraphrase *Pointer* [380 U.S. at 407, 85 S.Ct. at 1069] the statements of the witnesses were made "at a full-fledged hearing" with accused present and represented by counsel who was given "a complete and adequate opportunity to cross-examine."

*Id.* at 613.

In the instant case, defendant was represented by counsel at the preliminary hearing, the rules of evidence were in force at that hearing, and defendant was given the opportunity to cross-examine Carrillo. *See* SCRA 1986, 6–202(A) (Repl.Pamp.1990). While defendant did not exercise his right to cross-examination, he did so of his own volition. No action of the State impeded his opportunity to develop or impeach Carrillo's testimony.[4] It was not until defendant decided to change his tactics that he decided that cross-examination would be necessary. Under these circumstances, we hold that the testimony was admissible under an accepted hearsay exception and that, because he was given the opportunity to cross-examine the witness at the preliminary hearing, defendant was not denied the right to confront the witness against him.

---

3. Cases referred to us by appellant from other jurisdictions illustrate this point. In *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the defendant was not represented by counsel. In *State v. Magouirk*, 539 So.2d 50, 57 (La.App.1988), *withdrawn in part*, 561 So.2d 801 (1990) (withdrawn because defendant was found to have waived confrontation rights), after noting that the right to cross-examination is a primary interest secured by the confrontation clause, the court found that the objections of the prosecution that were sustained by the trial court effectively limited the defense in the scope and nature of its cross-examination, thus depriving him of the right to confront the witness. In *State v. Deskins*, 380 S.E.2d 676 (W.Va.1989), testimony from an earlier trial of a codefendant was found not to be admissible because the motive to develop testimony as against the defendant did not exist. An analysis of these cases indicates that when prior testimony was ruled inadmissible, the inadmissibility was based on structural impediments that created a different motive or removed the opportunity to cross-examine.

4. Unlike *People v. Smith*, 198 Colo. 120, 597 P.2d 204 (1979) (en banc), and *Scott v. State*, 272 Ark. 88, 612 S.W.2d 110 (1981), both cited to us by defendant, defendant was afforded a full-fledged hearing at which he could cross-examine. In *Smith*, the Colorado Supreme Court, over a vigorous dissent, determined that the scope of the preliminary hearings in Colorado is generally limited to screening purposes, with relaxed evidentiary and procedural rules. 597 P.2d at 207. The *Smith* court held that, because the defendant did not have a right to conduct broad cross-examination at the earlier hearing, the testimony could not be admitted. *Id.* at 208. In *Scott*, although the court refused to create a per se rule to prohibit the admission of prior testimony, it did not admit testimony when the transcript was not reliable and there was no evidence that the hearing was not limited. 612 S.W.2d at 113–14.

B. Foundation for Impeachment Evidence.

Regina Gonzales, defendant's daughter-in-law ("Regina"), testified three times—at Martin Gonzales's preliminary hearing, at defendant's preliminary hearing, and at trial—and offered three differing versions of events. At defendant's hearing, Regina testified that she saw defendant armed; at Martin Gonzales's hearing, she testified essentially that she did not know what happened; at trial, she testified that she had not seen weapons. At trial, the issue was whether Regina had been threatened with perjury and thus had lied at defendant's hearing to avoid charges. The State sought to show that Regina had not been asked about weapons at Martin Gonzales's hearing and thus could not have been subject to perjury charges after defendant's hearing. Regina first insisted she had been asked about weapons at Martin Gonzales's hearing; when the State offered to prove otherwise, she claimed to not remember. Martin Gonzales stipulated that the transcript could be admitted on the theory that Regina could not remember and was accordingly unavailable. SCRA 1986, 11–804(A)(3). After Regina could not remember her testimony at defendant's hearing, the transcript of that testimony was also admitted on the same theory. The prior testimony is also asserted to be relevant to assessing Regina's credibility.

Defendant argues that the court erred when it admitted Regina's prior testimony from defendant's preliminary hearing wholesale. He contends that Regina should have been confronted with each statement that she could not recall. Defendant also insists that the admission of Regina's testimony from Martin Gonzales's preliminary hearing violated his right to confront the witness.

■ We address defendant's second assertion first. Although testimony from Martin Gonzales's hearing was not admissible against defendant because he had had no opportunity to cross-examine, it was properly admitted as to Martin Gonzales. Defendant could have requested a limiting instruction, but he did not. *See* SCRA 1986, 11–105 (limited admissibility). Having not asserted his right to a limiting instruction at trial, defendant cannot prevail on his claim in this court. *State v. Martinez,* 102 N.M. 94, 100, 691 P.2d 887, 893 (Ct.App.1984).

■ Defendant's other assertion deserves more discussion. SCRA 1986, 11–613(B) states:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

The admission of inconsistent statements is a matter committed to the trial court's discretion; the court must balance the probative value of the evidence against its prejudicial effect. *State v. Davis,* 97 N.M. 130, 133, 637 P.2d 561, 564 (1981); SCRA 1986, 11–403 (exclusion of prejudicial evidence). Regina's forgetfulness regarding the inconsistency opened the door for the State to introduce evidence of the inconsistency. *See State v. Martinez,* 98 N.M. 27, 29, 644 P.2d 541, 543 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). Regina remained available for cross-examination regarding her earlier testimony; thus, defendant's right to examine Regina regarding the alleged inconsistencies was not denied. *See United States v. Collins,* 478 F.2d 837, 838 (5th Cir.), *cert. denied,* 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 248 (1973).

Furthermore, we do not believe that Rule 613 should be interpreted as rigidly as defendant requests. Regina was asked about her prior statement made during defendant's preliminary hearing, and insisted that she could not recall the prior inconsistent statements. The court, in the interest of economy and after the prosecutor attempted to read the prior testimony to Regina without successful recollection, admitted the transcript of the previous testimony. We believe this gave Regina adequate opportunity to explain the prior statements; however, her lack of memory simply prevented further explanation.

Moreover, even if the procedure followed by the State and the court in admitting the transcript did not follow the letter of Rule 613, defendant has not demonstrated, nor have we discerned, reversible error. *See State v. Litteral,* 110 N.M. 138, 143, 793 P.2d 268, 273 (1990) (impeachment of witness, even if improper, not prejudicial error); *State v. Duran,* 107 N.M. 603, 608–09, 762 P.2d 890, 895–96 (1988) ("[T]o establish a due process violation, and thus reversible error, the defendant must demonstrate prejudice."); *State v. Hoxsie,* 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) (absent prejudice, no reversible error), *rev'd on other grounds, Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 779 P.2d 99 (1989). Moreover, the evidence was cumulative. *See State v. Moore,* 94 N.M. 503, 505, 612 P.2d 1314, 1315–16 (1980). In light of the foregoing discussion, we find no abuse of the court's discretion in the way in which the transcript was admitted.

## III. PROSECUTORIAL MISCONDUCT.

Except for the closing argument, defendant made no objection to the asserted misconduct. Failure to make a timely objection to alleged improper argument bars review on appeal, unless the impropriety constitutes fundamental error. *State v. Clark,* 108 N.M. 288, 296, 772 P.2d 322, 330 (1989). Our review of the record indicates that defendant was not denied a fair trial by the actions of the prosecutor; however, we review several of defendant's assertions in more detail.

### A. Comments on Silence.

Defendant contends that questions regarding Martin Gonzales's and other Gonzales family members' failure to contact the police violated defendant's fifth amendment rights. *See State v. Lara,* 88 N.M. 233, 539 P.2d 623 (Ct.App.1975).

"The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial, and prevents the prosecution from commenting on the silence of a defendant who asserts the right." *Jenkins v. Anderson,* 447 U.S. 231, 235, 100 S.Ct. 2124, 2127, 65 L.Ed.2d 86 (1980). We do not perceive how defendant's fifth amendment rights were compromised by comments regarding the silence of witnesses, family members, and the codefendant. Moreover, the use of a defendant's prearrest silence to impeach is constitutional. *Id.* at 238, 100 S.Ct. at 2129. We certainly find no fundamental error here.

### B. Closing Argument.

Defendant asserts that statements made during closing argument regarding members of his family constitute error. Both the prosecution and the defendant are allowed latitude in closing arguments and the trial court has wide discretion in controlling closing argument. *State v. Venegas,* 96 N.M. 61, 63, 628 P.2d 306, 308 (1981). Our review indicates that the asserted errors were either cured by instructions of the court or were not errors.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL.

Defendant asserts that his trial counsel's failure to move to sever the count of felon in possession of a firearm from the other counts constitutes ineffective assistance of counsel. Defendant contends that counsel's failure to sever the counts allowed the State to introduce evidence of his prior conviction for vehicular homicide that otherwise would have been inadmissible at a trial for the murder and shooting into an occupied vehicle charges because defendant did not testify. Defendant argues that this evidence was prejudicial, notwithstanding limiting instructions. Defendant concludes that had evidence of his prior conviction been excluded, the result would have been different and thus, he was denied effective assistance of counsel.

Assistance of counsel is effective when "defense counsel [has] exercise[d] the skill, judgment and diligence of a reasonably competent defense attorney." *State v. Orona,* 97 N.M. 232, 233, 638 P.2d 1077, 1078 (1982) (quoting *Dyer v. Crisp,* 613 F.2d 275, 278, (10th Cir.), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980)). Assistance of counsel is presumed effective unless the defendant demon-

strates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice. *State v. Dean,* 105 N.M. 5, 8, 727 P.2d 944, 947 (Ct.App.), *cert. denied,* 104 N.M. 702, 726 P.2d 856 (1986). On appeal, we will not second guess the trial strategy and tactics of the defense counsel. *State v. Mares,* 112 N.M. 193, 200, 812 P.2d 1341, 1348 (Ct.App.), *cert. denied,* 112 N.M. 235, 814 P.2d 103 (1991).

To prevail on his ineffective assistance of counsel claim, defendant must first demonstrate that had his counsel moved for severance, the motion would have been granted. We note initially that joinder was appropriate here because the offenses were "based on the same conduct." SCRA 1986, 5–203(A)(1) (Cum.Supp. 1991). Properly joined offenses may be severed only if the defendant or the state is prejudiced by the joinder. SCRA 1986, 5–203(C) (Cum.Supp.1991); *State v. Pacheco,* 110 N.M. 599, 604, 798 P.2d 200, 205 (Ct. App.) *cert. denied,* 110 N.M. 533, 797 P.2d 983 (1990); *State v. Gallegos,* 109 N.M. 55, 64, 781 P.2d 783, 792 (Ct.App.1989). Defendant, as the moving party, bears the burden of proving that he suffered prejudice by the joinder. *Pacheco,* 110 N.M. at 604, 798 P.2d at 205. Denial of a motion for severance is within the sound discretion of the trial court. *Id.*

Defendant makes no showing of actual prejudice but merely states that "the proof of vehicular homicide could only have influenced the jury, notwithstanding instructions." In effect, defendant argues that joinder of the felon in possession charge with other charges arising out of the same conduct is per se prejudicial and requires severance. Because an assertion of prejudice is not equated with a showing of prejudice, *see Hoxsie,* 101 N.M. at 10, 677 P.2d at 623, we could summarily dismiss this issue. However, we address defendant's argument because it presents an important issue of first impression in New Mexico. We agree with the reasoning of those courts that have avoided adopting a per se rule requiring severance under similar circumstances. *See State v. Evans,* 235 Neb. 575, 456 N.W.2d 739, 744–46 (1990) (severance of felon in possession and robbery counts not required where defendant fails to show prejudice); *State v. Thompson,* 55 Wash.App. 888, 781 P.2d 501, 504 (1989) (failure to sever felon in possession and assualt charges not required absent prejudice to defendant); *State v. Fournier,* 554 A.2d 1184, 1186–87 (Me.1989) (severance of felon in possession and murder charges not required even in the absence of limiting instructions where defendant fails to show actual prejudice).

In the instant case, we do not feel that defendant showed prejudice that would require severance of the charges. The jury was told only that defendant had been convicted of vehicular homicide and was not given details surrounding that conviction. The prior conviction for vehicular homicide is so dissimilar from charges of either murder or shooting into an occupied vehicle that its introduction into evidence is insufficient to cause defendant undue prejudice. In addition, the jury was twice instructed to limit its use of the conviction to the felon in possession charge and not to consider the conviction on other counts. The jury is presumed to follow the court's instructions. *See State v. Case,* 100 N.M. 714, 719, 676 P.2d 241, 246 (1984). Thus, defendant has not met his burden of showing that severance of the charges would have been granted.

Even if we were convinced that severance was appropriate, we are not convinced that defendant should prevail on his ineffective assistance of counsel claim. Prior to trial, defendant's counsel asked for an instruction that limited the jury's consideration of the vehicular homicide to the felon in possession charge. At that point, defense counsel indicated that he was uncertain whether defendant would testify and failed to respond to the trial court's query regarding severance. If the defendant had testified, the State would have been permitted to introduce evidence of the vehicular homicide to impeach defendant's testimony. SCRA 1986, 11–609. Because defense counsel was still considering whether defendant would testify, we feel that the choice to refrain from seeking

severance was a tactical decision. "Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel." *Orona*, 97 N.M. at 234, 638 P.2d at 1079. In hindsight, defendant may be justified in questioning his counsel's trial tactics and strategies; however, the tactics and strategies of which defendant complains do not rise to the level of ineffective assistance of counsel.

In accordance with the foregoing discussion, we affirm defendant's conviction on the murder and shooting into an occupied vehicle charges. We reverse the sentence enhancement and remand with instructions to vacate this portion of defendant's sentence. With respect to the trial court's evidentiary rulings, we affirm. We also find that Mr. Gonzales's right to a fair trial was not violated by prosecutorial misconduct. Finally, we find that defendant's right to effective assistance of counsel was not violated.

IT IS SO ORDERED.

RANSOM, C.J., and MONTGOMERY, J., concur.