PUBLISH

F I L E D
United States Court of Appeals
Tenth Circuit

FEB 9 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PEDRO GONZALES,

        Petitioner - Appellant,

v.

RON LYTLE, Warden, Southern New
Mexico Correctional Facility;
ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO,

        Respondents - Appellees.

No. 97-2247

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV-95-249-HB/JHG)**

---

Todd B. Hotchkiss, Frechette & Associates, Albuquerque, New Mexico, for
Appellant.

Margaret E. McLean, Assistant Attorney General (Tom Udall, Attorney General,
with her on the brief), Santa Fe, New Mexico, for Appellees.

---

Before **ANDERSON** , **TACHA** , and **EBEL** , Circuit Judges.

---

**ANDERSON** , Circuit Judge.

Petitioner Pedro Gonzales, Sr. appeals the denial of his 28 U.S.C. § 2254 habeas petition. He was convicted by a jury of first degree murder, shooting into an occupied motor vehicle, and being a felon in possession of a firearm, in connection with the murder of Michael Sandoval. We reverse and remand.

## BACKGROUND

There was a "history of animosity" between Ben Rivera and Pedro Gonzales and the Gonzales family, particularly Pedro's son, Martin. State v. Gonzales, 824 P.2d 1023, 1025 (N.M. 1992). On the day of the shooting, August 6, 1988, Mr. Rivera drove his truck, with the victim, Mr. Sandoval, in the passenger seat, down an alley behind the Gonzales residence. Mr. Rivera testified that as he drove past the Gonzales home, Martin Gonzales and an unidentified individual opened fire on the truck, killing Mr. Sandoval. Mr. Rivera testified that he could not determine whether the second shooter was male or female. Present at the Gonzales home at the time of the shooting were Pedro Gonzales; his wife, Yolanda; his son, Martin; and Martin's common law wife, Judy Carillo. The fatal shot was fired from a gun belonging to Yolanda Gonzales.

Uncontradicted evidence at trial established that Pedro Gonzales, at the time of the shooting, walked with a cane, had been wearing a neck collar, and was recovering from surgery. He had been adjudged temporarily totally disabled in a

-2-

workers' compensation proceeding. His neighbor, however, testified that he moved around "just fine" with his cane. At the state post-conviction hearing, Pedro Gonzales' attorney described him as "immobilized to some degree."

The only potential witnesses to the shooting were Mr. Rivera and the various members of the Gonzales family who were in the residence. Martin Gonzales did not deny shooting at Mr. Rivera's truck. He claimed, however, that he had done so alone and in self-defense, after his wife, Judy Carillo, told him she had seen Mr. Rivera pointing a gun at them as their vehicles passed each other prior to the shooting. Pedro Gonzales has consistently denied any involvement in the shooting. Thus, Pedro's identity as the second shooter was the key issue in his trial. The other members of the Gonzales family gave varying, and at times, conflicting, accounts of what happened. We will discuss those where relevant.

The police arrested Pedro Gonzales after Regina Gonzales, Pedro Gonzales' daughter-in-law and the wife of Albert Gonzales, gave a taped statement to police on August 19 indicating that when she and her husband returned to the Gonzales home several hours after the shooting, she saw Martin and Pedro Gonzales holding guns. She also stated that she overheard Pedro, in a conversation with his sons, say that he had shot some people earlier in the evening. Regina later admitted, however, that this conversation had taken place in Spanish, a language

she does not understand. [1] At the time she made that statement to police, she and her husband had just separated, Albert Gonzales had filed for divorce because of Regina's infidelity, and Regina and her infant son were living at a women's shelter.

Both Pedro and Martin were charged with first degree murder and shooting into an occupied motor vehicle. At Martin's preliminary hearing, Regina Gonzales testified, contrary to her earlier taped statement, that she had not seen either Martin or Pedro Gonzales with a weapon on the evening of the shooting. She further testified that she knew nothing about the shooting. Judy Carillo asserted her Fifth Amendment rights in Martin's preliminary hearing and did not testify.

At Pedro's preliminary hearing, Pedro's counsel was initially unaware of any evidence that would directly link Pedro to the shooting. At a break in the hearing, however, Martin Gonzales' attorney informed Pedro's counsel that Judy Carillo and Regina Gonzales would, later in the hearing, tie Pedro to the shooting.

---

[1]The state does not indicate in its brief that evidence of this statement to police, claiming that Regina had overheard Pedro admit to the shooting, was ever presented to the jury. Furthermore, as we note infra, Regina changed her story virtually every time she testified, so much so that the state trial court, in denying Pedro post-conviction relief, observed that Regina "contradicted herself multiple times, often in the same hearing, on many subjects including the source of her knowledge." Tr. of Record Proper Vol. 3, at 368.

The state had applied to the court for use immunity for Ms. Carillo in an effort to force her to testify.

When Pedro's counsel inquired, Ms. Carillo related that if she were to testify, she would state that she saw Pedro and Martin Gonzales fire at Ben Rivera's truck, but only after Mr. Rivera had pointed a weapon at them. Ms. Carillo, called as a witness by the state, did give this testimony at the preliminary hearing. Pedro's counsel did not cross-examine her, although the court gave counsel that opportunity. Regina Gonzales also testified at Pedro's preliminary hearing, stating, contrary to what she had said in Martin Gonzales' preliminary hearing, that when she and Albert had returned home several hours after the shooting, she had seen Pedro with a rifle in his hand.

Pedro and Martin were tried jointly. During the trial, when the state sought to call Judy Carillo as a witness, the trial court held a hearing outside the presence of the jury to determine whether Ms. Carillo intended to invoke her Fifth Amendment privilege not to testify. The trial court was concerned that, should Ms. Carillo testify differently at trial than she had at Pedro Gonzales' preliminary hearing, and there apparently was some indication that she would testify differently, she would expose herself to a perjury conviction because, regardless of which testimony was true, she would have inconsistently testified under oath in two different proceedings. The court placed Ms. Carillo under oath, whereupon

she testified that her preliminary hearing testimony identifying Pedro Gonzales as the second shooter was false. Ms. Carillo ultimately invoked her Fifth Amendment privilege and declined to testify at Pedro Gonzales' trial.

Over Pedro's objection, the court allowed the state to admit into evidence Ms. Carillo's preliminary hearing testimony, because she was unavailable to testify at trial. The trial court, however, denied Martin Gonzales' motion seeking to inform the jury that Ms. Carillo had subsequently, under oath, recanted that testimony. Pedro Gonzales' counsel did not move to introduce evidence of that recantation. The jury therefore heard Ms. Carillo's preliminary hearing testimony, which was the only evidence directly tying Pedro Gonzales to the shooting, and was instructed to consider it only against Pedro, not against Martin Gonzales. [2]

Regina Gonzales testified at trial, stating that the testimony she gave at Pedro's preliminary hearing was false. She asserted that she had, in fact, never seen Pedro with a weapon on the night of the shooting, and that the district attorney had coerced her preliminary hearing testimony by threatening to have the state take custody of her child.

---

[2]The court properly limited the jury's consideration of Ms. Carillo's preliminary hearing testimony to Pedro Gonzales because Martin Gonzales' attorney was not present during Pedro Gonzales' preliminary hearing, and therefore had no opportunity to cross-examine Ms. Carillo.

Although his attorney strongly advised him to testify at trial, Pedro refused. The jury convicted Pedro of first degree murder, shooting into an occupied vehicle, and being a felon in possession of a firearm, and he was sentenced to life in prison plus three years. The New Mexico Supreme Court affirmed his conviction. State v. Gonzales, 824 P.2d 1023 (N.M. 1992). Pedro Gonzales' first state post-conviction petition was denied. He filed a second state post-conviction petition arguing ineffective assistance of counsel. Following an evidentiary hearing, the court concluded that Pedro had effective assistance of counsel and denied the petition. This federal habeas petition was filed on March 9, 1995.[3] The district court dismissed the petition, and this appeal followed. We issued a certificate of probable cause on June 4, 1998.

On appeal, Pedro Gonzales argues: (1) the introduction at trial of Ms. Carillo's preliminary hearing testimony violated his Sixth Amendment right to confront the witnesses against him; (2) his attorney was ineffective for (a) failing to cross-examine Ms. Carillo at the preliminary hearing; (b) pursuing a defense other than that claimed by Pedro; (c) failing to seek the introduction at trial of Ms. Carillo's statement recanting her preliminary hearing testimony; (d) failing to

---

[3]The recent amendments to § 2254 enacted in the Antiterrorism and Effective Death Penalty Act do not apply to this petition because it was filed prior to the effective date of that Act. See Richmond v. Embry, 122 F.3d 866, 870 (10th Cir. 1997), cert. denied, 118 S. Ct. 1065 (1998).

request an instruction limiting the jury's consideration of Regina Gonzales' preliminary hearing testimony; and (e) failing to move to sever Pedro's trial from that of Martin and to sever the felon-in-possession of a firearm charge from the other counts; and (3) his trial was rendered fundamentally unfair, in violation of due process, by the court's refusal to admit Ms. Carillo's recantation.

## DISCUSSION

"In reviewing the denial of a petitioner's habeas petition, we accept the district court's factual findings unless they are clearly erroneous and we review the court's legal conclusions de novo."  <u>Houchin v. Zavaras</u>, 107 F.3d 1465, 1469 (10th Cir. 1997) (footnote omitted).  Because we find that Pedro is entitled to habeas relief on one of his arguments, we address it alone.

Pedro Gonzales makes two arguments relating to the refusal to admit Ms. Carillo's recantation:  first, his counsel was ineffective in failing to seek the introduction of Ms. Carillo's recantation, and second, the exclusion of that recantation rendered his trial fundamentally unfair, in violation of the Fourteenth Amendment due process clause.  We grant habeas relief on his Fourteenth Amendment claim. [4]

_____

[4]Although Pedro largely couches his claims about the recantation testimony in terms of whether his counsel was ineffective in failing to seek its admission, he
(continued...)

Pedro argues the trial court's refusal to admit Ms. Carillo's recantation rendered his trial fundamentally unfair. See Matthews v. Price , 83 F.3d 328, 331 (10th Cir. 1996) ("We review due process challenges to state evidentiary rulings only for fundamental unfairness . . . ."). This inquiry "hinges on the materiality of the excluded evidence to the defense." Id. at 332; see also Maes v. Thomas , 46 F.3d 979, 987 (10th Cir. 1995). On habeas review, "our inquiry is limited to whether the court's hearsay determinations deprived the defendant of his constitutional rights to due process and to compel favorable testimony." Matthews , 83 F.3d at 332.

There can be little doubt that Ms. Carillo's recantation was material to Pedro Gonzales' defense and favorable to him. Ms. Carillo's preliminary hearing testimony, in which she said she saw Pedro participate in the shooting, was the only piece of evidence directly linking Pedro to the shooting. [5] Her recantation of

---

[4](...continued)
does also make the separate due process argument. The parties dispute whether he raised the separate due process argument in state court proceedings. In any event, he raised it before the federal district court, and the state has conceded that it did not argue the issue was procedurally barred. While we may sua sponte raise procedural bar, we are not obligated to, and we decline to do so in this case.

[5]Neither in its brief nor at oral argument, despite direct questioning on the point, did the state refer to any other testimony or evidence in the record of this case directly linking Pedro to the shooting, or identifying him as the second shooter. As indicated earlier, Regina Gonzales was thoroughly discredited as a witness, and, in any event, she testified at trial that she had never seen Pedro with a gun on the night of the shooting.

that testimony, under oath, would have inevitably caused the jury to reflect critically on her preliminary hearing testimony. Of course, had the jury heard the recantation, there is a possibility that jurors would have disregarded the recantation, believed the preliminary hearing testimony, and convicted Pedro Gonzales. The problem, however, is that they were never given that opportunity. We conclude that the failure to permit the jury to consider the recantation, which undermined the credibility of the crucial singular piece of evidence directly inculpating Pedro, rendered the trial fundamentally unfair.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND this case to the district court with instructions to grant Pedro Gonzales' habeas petition unless the state retries him within a reasonable time to be determined by the district court.