2006-NMCA-059

136 P.3d 1005

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Calupp HENDERSON, Defendant–Appellant.**

**No. 24,850.**

Court of Appeals of New Mexico.

Feb. 14, 2006.

Certiorari Denied, No. 29,702, May 25, 2006.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} This case requires us to determine whether the admission of preliminary hearing testimony of an unavailable witness at Defendant's trial violated the Confrontation Clause of the Sixth Amendment under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and whether Defendant was entitled to a mistrial when a witness invoked his Fifth Amendment privilege before the jury during his testimony. We hold that Defendant was afforded his Confrontation Clause rights and that no abuse of discretion was committed in denying his motion for a mistrial. The remaining issues raised by Defendant were abandoned. *State v. Aragon*, 109 N.M. 632, 634, 788 P.2d 932, 934 (Ct.App.1990) ("All issues raised in the docketing statement but not argued in the briefs have been abandoned."). We therefore affirm.

## BACKGROUND

{2} Officer Donald Jackson and Detective Walter Coburn of the Hobbs Police Department were dispatched to the home of Tarious Ford to investigate a robbery call in which Ford and a guest, Tracy Eagans, were the alleged victims. As a result of their investigation, a criminal complaint was filed in the magistrate court charging Defendant with aggravated burglary, armed robbery, and conspiracy to commit armed robbery. Defendant was arrested and counsel was appointed to represent him. The same attorney continued to represent Defendant throughout the case.

{3} A preliminary hearing was then held in the magistrate court at which Ford and Eagans testified about the incident at Ford's home. Their testimony was under oath and it was tape recorded. Defendant was present during the entire hearing and his attorney cross-examined both witnesses about their testimony without any limitations being

imposed by the magistrate judge on the scope or content of the cross-examination. At the conclusion of the preliminary hearing the magistrate judge made a finding of probable cause and Defendant was bound over for trial in district court on all charges.

{4} At trial the evidence was as follows. Officer Jackson and Detective Coburn were dispatched to a robbery complaint at Ford's home. Eagans, a friend who was visiting Ford, told the officers that a mutual acquaintance of theirs, Fabian Marshall, entered Ford's home without knocking as was his custom. Three other men, Chuck Green, Keylie Martin, and Defendant followed Marshall into Ford's home. Once inside, Martin used a gun and Green a screwdriver to force Eagans and Marshall to remove their clothing. In the meantime, Defendant hit Ford on the shoulder with a gun and forced him to lie down on the floor. The three men then took Ford's pager, at least one of his girlfriend's cellular telephones, an X Box video game player and $547 in cash belonging to Eagans and left. After the police officers arrived, Ford's telephone rang and his caller identification showed that the call originated from his girlfriend's stolen cellular telephone. Ford recognized the caller as Defendant. Ford held the receiver away from his ear to allow Detective Coburn to hear, and Coburn heard the caller inform Ford that he took the items from Ford's home because someone owed him $400. Detective Coburn listened to a second call a few minutes later in the same manner in which the caller said that if Ford gave him $400 he would return the stolen property.

{5} Defendant rested without presenting any evidence on his own behalf. In closing arguments, he asked the jury to disregard Ford's testimony entirely because he was not able to confront him on all the issues. He also argued that the elusiveness and reluctance of the victim witnesses Eagans and Marshall to testify made them unbelievable. Defendant was convicted of all the charges.

## DISCUSSION

## ADMISSION OF THE PRELIMINARY HEARING TESTIMONY UNDER *CRAWFORD*

{6} Defendant's argument that Ford's preliminary hearing testimony was admitted in violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution under *Crawford* presents a question of law which we review de novo. *State v. Dedman,* 2004–NMSC–037, ¶ 23, 136 N.M. 561, 102 P.3d 628.

{7} Prior to trial the State filed a motion to admit into evidence the tapes of the preliminary hearing testimony of Ford and Eagans pursuant to Rule 11–804(B)(1) NMRA as the testimony of unavailable witnesses. Following two evidentiary hearings in which the State demonstrated its extensive efforts to attempt locating and producing Ford and Eagans to testify at trial, the trial court granted the motion. In doing so, the trial court acknowledged that Defendant could not have cross-examined them at the preliminary hearing on all issues that were relevant to his defense because all the issues were not known at that time. Admission of the testimony was not unqualified. The trial court ruled that Defendant would be able to argue to the jury that these witnesses were not credible because when they could not be located, the charges against the co-defendants Keylie Martin and Chuck Green were dismissed. Nevertheless, Defendant objected, arguing that admitting the preliminary hearing tapes at trial would violate his constitutional right to confront the witnesses against him. Eagans was ultimately located and subpoenaed to testify at the trial, so only Ford's preliminary hearing testimony was admitted.

{8} We first determine whether the preliminary hearing testimony was properly admitted under the Rules of Evidence because if the hearsay testimony was improperly admitted to Defendant's prejudice, we are not required to decide the *Crawford* constitutional issue. The admissibility of evidence as an exception to the hearsay rule is separate from the objection based on confrontation grounds, and its admission is reviewed for an abuse of discretion. *Dedman,* 2004–NMSC–037, ¶ 23, 136 N.M. 561, 102 P.3d 628.

{9} The admissibility of hearsay testimony of an "unavailable" witness who testifies in a

preliminary hearing is governed by Rule 11–804(B)(1). Ford satisfies the definition of an "unavailable" witness because the State was unable to procure his attendance at the trial. *See* Rule 11–804(A)(5) (defining "[u]navailability as a witness" in part to mean "the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means"). Rule 11–804(B)(1) provides, "[t]estimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an *opportunity and similar motive* to develop the testimony by direct, cross or redirect examination[,]" is not excluded by the hearsay rule. (Emphasis added.) We must therefore determine whether Defendant had an "opportunity and similar motive" to develop Ford's testimony at the preliminary hearing as contemplated by the Rule.

{10} In *State v. Massengill*, 99 N.M. 283, 657 P.2d 139 (Ct.App.1983), the defendant argued that the preliminary hearing testimony of an unavailable witness was erroneously admitted, contending he did not have the same motive to cross-examine the witness at trial as at the preliminary hearing. *Id.* at 284, 657 P.2d at 140. His argument was rejected on the rationale that the defendant had an *opportunity and motive* to develop the testimony given by the witness at the preliminary hearing concerning whether a crime had been committed and whether the defendant committed the crime. His motive to develop the testimony at trial was similar—to ask questions concerning the commission of a crime and the defendant's involvement. *Id.* at 285, 657 P.2d at 141. Further, the fact that the defendant chose not to further cross-examine the witness was a matter of tactics, not motive. *Id.* In coming to this conclusion the court emphasized that a defendant has a due process right to be allowed to call whatever witnesses he desires in his own defense at a preliminary hearing, that the Rules of Evidence are applicable in a preliminary hearing, and that witnesses may be cross-examined and their credibility and character tested. *Id.* at 284–85, 657 P.2d at 140–41.

{11} The *Massengill* reasoning was subsequently approved by our Supreme Court in *State v. Gonzales*, 113 N.M. 221, 226, 824 P.2d 1023, 1028 (1992). However, *Gonzales* also recognized that "if the circumstances and facts of a particular case indicate that there was a real difference in motive or other limitation on meaningful cross-examination, the [prior] testimony should not be admitted." *Id.* Examples cited were where defense counsel had no motive to cross-examine a witness at the first trial because of an agreement with the prosecutor that a judgment of not guilty by reason of insanity would be entered, the witness later died, and his recorded testimony was then admitted at a second trial (*State v. Slayton*, 90 N.M. 447, 564 P.2d 1329 (Ct.App.1977)); where defendant was not represented by counsel at the preliminary hearing (*Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)); where objections of the prosecution that were sustained effectively limited the defendant in the scope and nature of his cross-examination (*State v. Magouirk*, 539 So.2d 50 (La.Ct.App.1988), *withdrawn in part*, 561 So.2d 801 (La.Ct.App.1990)); and where the testimony from an earlier trial of a co-defendant was determined not admissible because the motive to develop the testimony as to the defendant did not exist (*State v. Deskins*, 181 W.Va.112, 380 S.E.2d 676 (1989)). *Gonzales*, 113 N.M. at 226–27 & n. 3, 824 P.2d at 1028–29 & n. 3. Another exception that was later recognized was where the State had no reason to challenge a witness' grand jury testimony when medical evidence that contradicted the witness was unknown at the time the witness testified before the grand jury. *See State v. Baca*, 1997–NMSC–045, ¶ 26, 124 N.M. 55, 946 P.2d 1066.

{12} Applying the foregoing authorities, we conclude it was not an abuse of discretion to admit Ford's preliminary hearing testimony at Defendant's trial as an exception to the hearsay rule under Rule 11–804(B)(1). Defendant was freely allowed to cross-examine Ford without any restrictions at the preliminary hearing about whether any crime was committed and whether Defendant was in-

volved. He therefore had an "opportunity and similar motive" to cross-examine Ford at the preliminary hearing as he would have at trial, and there are no circumstances showing a real difference in Defendant's motive to cross-examine Ford differently at the preliminary hearing than at trial. When Ford later became unavailable to testify at the trial, his recorded preliminary hearing testimony became admissible as an exception to the hearsay rule.

{13} In *Crawford,* the United States Supreme Court revised the framework for determining when the admission of hearsay evidence violates the Confrontation Clause of the Sixth Amendment. Under *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the admission of hearsay evidence did not violate the Confrontation Clause where: (1) the prosecutor demonstrated that the declarant whose statements it wished to use against the defendant was unavailable; and (2) after the witness was shown to be unavailable, the trial court found that the statement possessed adequate "indicia of reliability." *Id.* at 65–66, 100 S.Ct. 2531. A hearsay statement was deemed sufficiently reliable to satisfy the Confrontation Clause when it: (1) fell within a "firmly rooted hearsay exception"; or (2) possessed "particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. 2531. Our Supreme Court has concluded that *Crawford* did not change this approach for "nontestimonial" evidence. *Dedman,* 2004–NMSC–037, ¶¶ 32–33, 136 N.M. 561, 102 P.3d 628; *see also Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. However, as to "testimonial" evidence the Confrontation Clause is violated unless: (1) the witness is unavailable; and (2) the defendant had a prior opportunity to cross-examine. Specifically, the Supreme Court held:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavaila-

bility and a *prior opportunity for cross-examination.* We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Crawford,* 541 U.S. at 68, 124 S.Ct. 1354. (emphasis added) (footnote omitted).

{14} The evidence that was admitted against Defendant was "prior testimony at a preliminary hearing." It is therefore "testimonial" evidence as defined by the Supreme Court, and subject to the *Crawford* requirements. Defendant does not argue that the State made an insufficient attempt to locate Ford or that he was not unavailable. The question therefore posed in this case is whether Defendant had a sufficient "prior opportunity for cross-examination" of Ford to satisfy *Crawford.* If he did, no Confrontation Clause violation occurred.

{15} Whether admission of the preliminary hearing testimony violates the Confrontation Clause under the standard articulated by *Crawford* is an issue of first impression in New Mexico. However, our courts have decided other cases under *Crawford* that guide our decision in this case. In *State v. Duarte,* 2004–NMCA–117, 136 N.M. 404, 98 P.3d 1054, we construed *Crawford* as holding that an accomplice's testimonial statement was inadmissible under the Confrontation Clause "unless the accomplice was unavailable and the defendant had a prior opportunity to cross-examine the accomplice *concerning the statement." Id.* ¶ 10 (emphasis added). *State v. Alvarez–Lopez,* 2004–NMSC–030, 136 N.M. 309, 98 P.3d 699, and *State v. Johnson,* 2004–NMSC–029, 136 N.M. 348, 98 P.3d 998, followed. In both cases our Supreme Court held that the admission of a statement made by an accomplice in a custodial police interview violated *Crawford.* In *Alvarez–Lopez,* the court said that the "[d]efendant had no opportunity to cross-examine [the accomplice] at a preliminary hearing, grand jury proceeding, or otherwise *on these*

testimonial statements." *Alvarez–Lopez,* 2004–NMSC–030, ¶ 24, 136 N.M. 309, 98 P.3d 699 (emphasis added). Similarly, the defendant in *Johnson* did not "at any time have an opportunity to cross-examine [the accomplice] *on his statement.*" *Johnson,* 2004–NMSC–029, ¶ 6, 136 N.M. 348, 98 P.3d 998 (emphasis added). In the same vein, our Supreme Court said that the defendant "was deprived of the opportunity to cross-examine [the accomplice] to *challenge the reliability of his statement.*" *State v. Forbes,* 2005–NMSC–027, ¶ 3, 138 N.M. 264, 119 P.3d 144 (emphasis added). Admission of the statement therefore violated *Crawford. Forbes,* 2005–NMSC–027, ¶ 6, 138 N.M. 264, 119 P.3d 144.

■ {16} In line with the reasoning of the foregoing cases, we conclude that the admission of a "testimonial" statement given by a witness under oath in a preliminary hearing does not violate the Confrontation Clause under *Crawford* where: (1) the witness is unavailable; and (2) the defendant had a prior *opportunity* to cross-examine *the statement* that is now being offered into evidence against him. We note that our Rules of Evidence conceivably provide greater protection than *Crawford.* While Rule 11–804(B)(1) requires the defendant to have had both an "opportunity and similar motive" to cross-examine the statement for it to be admissible, *Crawford* only requires that the defendant had an "opportunity for cross-examination" of the statement.

{17} Our conclusion is consistent with the result reached in cases from other states. *See State v. Young,* 277 Kan. 588, 87 P.3d 308, 316–17 (2004) (holding that the preliminary hearing testimony of an unavailable witness was admissible at trial under *Crawford* because counsel who represented the defendant at the preliminary hearing had an opportunity to cross-examine the witness); *Primeaux v. State,* 2004 OK CR 16, ¶ 64, 88 P.3d 893, 905 (allowing use of preliminary hearing testimony of unavailable witness at trial, stating that when a defendant is afforded the opportunity to cross-examine the witness and avails himself of that right, *Crawford* is satisfied); *see also State v. Hannon,* 703 N.W.2d 498, 507–08 (Minn.2005) (holding that the

admission in a second trial of testimony given by an unavailable witness in the first trial did not violate *Crawford* where counsel had a full opportunity to cross-examine the witness at the first trial, embracing credibility and all other issues, noting that *Crawford* only requires that the defendant had a prior *opportunity* to cross-examine the witness).

{18} Two cases hold that admitting preliminary hearing testimony violated *Crawford: State v. Stuart,* 2005 WI 47, 279 Wis.2d 659, 695 N.W.2d 259, and *People v. Fry,* 92 P.3d 970 (Colo.2004) (en banc). However, those cases are not contrary to our holding here because both relied on the fact that the applicable procedural rules governing preliminary hearings barred the defendant from fully cross-examining the witness, particularly on matters of credibility. *Stuart,* 2005 WI 47, ¶¶ 29–38, 695 N.W.2d at 265–67; *Fry,* 92 P.3d at 977.. These two cases are therefore consistent with the exceptions for admitting prior testimony set forth by our own Supreme Court in *Gonzales* set forth above in ¶ 11.

{19} Defendant argues that because "there was a real difference in motive and ability to cross-examine between the preliminary hearing and the trial" he was "unable to adequately present his theory of the case" at trial. We disagree. At the preliminary hearing and trial, Defendant was charged with the same crimes, he had the same defense counsel, and the same opportunity and motive to cross-examine Ford. Defendant was given an unrestricted right to cross-examine the statements Ford gave at the preliminary hearing which were later admitted at trial. This satisfied *Crawford.* The fact that Defendant might have engaged in additional cross-examination if Ford testified at trial does not require a contrary result.

{20} A comparison of Eagans' live trial testimony with Ford's tape recorded preliminary hearing testimony demonstrates that while Ford's testimony is not word-for-word identical, the testimony interlocks, and the core evidence that supports Defendant's convictions is uncontroverted and consistent. Eagans and Ford both testified that they were at Ford's home on April 20, 2003, when Marshall arrived with three other individuals,

including Defendant. They differed as to whether Marshall had permission to enter the house but both stated that the three men who entered the house after Marshall were not acquaintances who had authorization to enter without knocking. Both witnesses testified that Defendant and another man drew guns once inside while the third brandished a screwdriver. They both testified that Defendant held a gun to Ford's head and hit him on the shoulder with a gun while giving orders to the other two men. Both witnesses identified Defendant's gun as a .09 millimeter "highpoint." They also both testified that two of the men demanded that Eagans and Marshall remove their clothing and sit on the couch while the two men went through their clothes and that Defendant forced Ford to lay on the floor. Both witnesses testified that the three men took an X Box, X Box games, a cell phone, and the cash. Finally, both witnesses testified that the three men attempted to force Ford to go with them when they departed but that Ford refused.

{21} We therefore hold that the admission of Ford's preliminary hearing testimony was consistent with *Crawford* and not in violation of the Confrontation Clause of the Sixth Amendment.

## DENIAL OF MOTION FOR MISTRIAL

{22} Defendant argues that he should have been granted a mistrial because Marshall exercised his Fifth Amendment privilege not to testify in the presence of the jury. We review the refusal of the trial court to grant Defendant's motion for a mistrial for an abuse of discretion. *See State v. Gutierrez*, 2005–NMCA–093, ¶ 9, 138 N.M. 147, 117 P.3d 953, *cert. granted*, 2005–NMCERT–007, 138 N.M. 146, 117 P.3d 952. Finding no abuse of discretion by the trial court in this case, we affirm.

{23} Marshall began his testimony by confirming he did not want to testify and acknowledging he was incarcerated and awaiting trial on drug charges. Marshall said he knew Eagans and Ford, having gone to junior college with both of them. He also knew Defendant and identified him. After then confirming that he went to Fords's house on the date in question, he invoked his Fifth Amendment privilege against self-incrimina-

tion, whereupon the prosecutor said he had no further questions. When asked if he had any cross-examination, defense counsel requested a bench conference. At the bench conference, defense counsel said Marshall had been in custody and asserted he should have been advised that Marshall was going to invoke his Fifth Amendment privilege. Since Marshall had invoked the privilege in the presence of the jury, defense counsel made a motion for a mistrial.

{24} The prosecutor responded:

I talked to [Marshall] previously. He told me more than what he said today, and then he said he didn't want to testify and we didn't get any further. Our conversation, he never mentioned invoking a Fifth Amendment privilege to me, and I do not know of any reason that he has a Fifth Amendment privilege, although I can certainly see some scenarios where he might.

Defense counsel then argued that invoking the Fifth Amendment privilege in the presence of the jury had "all kinds of implications" that were prejudicial. The prosecutor responded that Marshall's invocation of the privilege in the jury's presence was more prejudicial to the State than Defendant under the circumstances, and the trial court agreed.

{25} The motion for a mistrial was denied, and defense counsel asked that Marshall's testimony be stricken and the jury was advised to disregard his testimony. At the conclusion of the bench conference, Marshall was excused after defense counsel announced in open court in the presence of the jury he had no questions to ask him. At the conclusion of the case, and without any objection from the State, the trial court instructed the jury, "You will recall that [Marshall] took the benefit of the Fifth Amendment on his testimony and refused to testify. Based on his doing that, you should disregard his testimony entirely."

{26} In *State v. Vega*, 85 N.M. 269, 511 P.2d 755 (Ct.App.1973), the record established that the prosecution knew witnesses it intended to call would invoke the Fifth Amendment. Nevertheless, the prosecutor called the witnesses, and they invoked their

privilege in the presence of the jury. The defendant's motions for mistrial were denied. *Id.* at 270, 511 P.2d at 756. We did not ascribe any particular motive to the prosecutor, but focused our attention on the issue of prejudice to the defendant. *Id.* We have since held that it is not permissible to call witnesses before the jury, knowing that they will invoke the Fifth Amendment privilege before the jury, for the purpose of having them do so. *State v. Crislip,* 110 N.M. 412, 417, 796 P.2d 1108, 1113 (Ct.App.1990), *overruled on other grounds by Santillanes v. State,* 115 N.M. 215–20, 849 P.2d 358–63 (1993). To determine if prejudice occurred in *Vega,* we examined the surrounding circumstances, focusing on two factors, each of which would suggest a distinct ground for finding prejudice: (1) error could be based "upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege"; and (2) error could "rest upon the conclusion that, in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Vega,* 85 N.M. at 271, 511 P.2d at 757 (internal quotation marks omitted) (citing *Namet v. United States,* 373 U.S. 179, 186–87, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963)). In *Vega,* invocation of the privilege by the witnesses in the presence of the jury created an unfair inference of guilt against the defendant in favor of the State. 85 N.M. at 271–72, 511 P.2d at 757–58. Therefore, we reversed. *Id.*

{27} In *State v. Worley,* 100 N.M. 720, 676 P.2d 247 (1984), the witness was granted immunity but still refused to answer certain questions, asserting he had a right not to answer the questions under the Fifth Amendment in the presence of the jury. *Id.* at 723–24; 676 P.2d at 250–51. Our Supreme Court held that no reversible error occurred because the prosecutor had a right to assume that the witness would testify or that his testimony would be compelled; the prosecutor did not build his case from inferences supplied by the witness' silence; and the presentation of testimony untested by

cross-examination did not result when the witness refused to testify. *Id.* at 725, 676 P.2d at 252.

{28} This case does not reflect a conscious case of prosecutorial misconduct in which the prosecutor attempted to build his case out of inferences arising from the use of Marshall's testimonial privilege. The State explained at trial that while Marshall had indicated earlier that he did not want to testify, he did not mention invoking his Fifth Amendment privilege nor did the State know of any reason why Marshall chose to invoke his right. Further, Marshall's invocation of his Fifth Amendment privilege in the jury's presence did not result in the addition of critical weight to the State's case in a form not subject to cross-examination. His testimony encompassed only (1) an acknowledgment that he knew Eagans, Ford, and Defendant, (2) an in-court identification of Defendant, and (3) an admission that he used to go to Ford's house on occasion. This testimony can hardly be deemed to be adding "critical weight" to the State's case given the other evidence in the case. *See State v. Polsky,* 82 N.M. 393, 402, 482 P.2d 257, 266 (Ct.App. 1971) (concluding that under the circumstances, no impermissible inference as to the defendant's guilt was likely to have been drawn by the jury from the refusal of the witness to answer the questions asked of her). Any possible prejudice created by Marshall's invocation of his Fifth Amendment right was remedied by the curative instruction given by the trial court. *See Worley,* 100 N.M. at 724, 676 P.2d at 251 (noting that the trial court instructed the jury not to consider prior statements made by the witness or the fact that the witness refused to answer certain questions).

{29} Finally, we note that the guidelines contained in our Rules of Evidence concerning the claim of a privilege were satisfied. Rule 11–513 NMRA is entitled, "Comment upon or inference from claim of privilege; instruction," and it provides:

A. Comment or inference not permitted. The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of com-

ment by the court or counsel. No inference may be drawn therefrom.

B. Claiming privilege without knowledge of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

C. Jury instruction. Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom.

{30} For the foregoing reasons it was not an abuse of discretion for the trial court to deny Defendant's motion for a mistrial.

## CONCLUSION

{31} The judgment and sentence are affirmed.

{32} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and JAMES J. WECHSLER, Judge.