# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                                    **NO. 28,090**

**WALLACE LEE SANCHEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

Defendant appeals from his conviction for driving while intoxicated. As there is no evidence of record to support Defendant's arguments that his conviction should

be reversed based on an inadequate interpretation of his trial and, as we reject Defendant's argument that the district court judge's refusal to recuse himself constituted fundamental error, we affirm.

**BACKGROUND**

Defendant, who is deaf-mute, required the aid of a deaf interpreter at trial. Four interpreters were present on his trial date—two hearing interpreters, who would interpret the proceedings into sign language, and two deaf interpreters who would interpret the sign language into a form that would be more comprehensible to Defendant. After voir dire, opening statements, and the testimony of the State's first witness, the interpreters informed the district court that they did not believe they were communicating effectively with Defendant and that this had been an ongoing problem. The interpreters said they were no longer willing to participate in the proceedings because they did not believe that Defendant was being afforded his constitutional right to be linguistically present at trial. Rather than taking any steps to inquire into whether Defendant had in fact understood the translation—by, for example, holding a short evidentiary hearing and asking Defendant through his interpreters what had taken place or asking the interpreters specifically why they believed that Defendant had not adequately understood them—the district court simply threatened to jail the interpreters for contempt of court.

Defense counsel did not request an evidentiary hearing to determine whether Defendant had understood the translation up until that point and did not move for a mistrial based on any alleged failure of Defendant to be linguistically present for the first part of the trial. Defense counsel did state her prospective concern that if there was no one to interpret for the rest of the trial, the district court would have to dismiss the case or grant a mistrial. The district court pointed out that this would lead to a delay in Defendant's trial, causing him to spend more time in pretrial incarceration, and asked, "How about the family members interpreting?" Defense counsel responded "That was what we–I was going to try if the certified interpreters weren't able to do it." When the district court asked defense counsel if she was still seeking a mistrial, defense counsel specifically stated that she had not actually asked for a mistrial so long as there was an interpreter present for the remainder of the trial, and she agreed to have Defendant's daughter serve as an interpreter.

Defendant's daughter was sworn in and interpreted the remainder of the trial. Defendant was convicted of one count of driving under the influence of alcohol. Defendant appeals.

**DISCUSSION**

Defendant raises two claims of error relating to the interpretation of his trial and one claim relating to the alleged bias of the district court judge. Before we address

3

Defendant's claims about the interpretation, we discuss a few of the facts relevant to Defendant's arguments and the authorities on which he relies.

First, we note that Defendant's entire trial was translated—through the first witness by the certified court reporters and from there to the end of the trial by Defendant's daughter. Therefore, this case is distinguishable from cases in which no interpreter was provided and from cases in which an interpreter was provided but the interpreter did not interpret all parts of the trial. On the facts before us, the issue is not whether Defendant's rights were violated by a failure to provide a complete interpretation, but whether the complete interpretation Defendant received was legally sufficient. Second, neither Defendant nor his attorney ever sought a determination by the district court about whether the interpretation provided by the certified interpreters was adequate and did not object to the use of Defendant's daughter as an interpreter. Therefore, this case is distinguishable from those cases in which a defendant or his attorney raised an argument about or sought a remedy for an allegedly insufficient interpretation in the first instance in the district court, and cases employing an abuse of discretion standard are inapplicable. With these facts in mind, we turn to Defendant's claims.

**The District Court's Failure to Grant a Mistrial Due to Defendant's Alleged Inability to Understand the First Part of the Trial**

Defendant relies on a number of state and federal statutes and constitutional provisions for his assertion that the district court committed reversible, fundamental, or structural error in failing to grant a mistrial based on Defendant's inability to understand the first part of his trial. The grant or denial of a mistrial is generally reviewed for an abuse of discretion. *See State v. Henderson*, 2006-NMCA-059, ¶ 22, 139 N.M. 595, 136 P.3d 1005. However, here Defense counsel specifically stated that she had not moved for a mistrial. We therefore review this claim for fundamental error. *See State v. Gallegos*, 2009-NMSC-017, ¶ 26, 146 N.M. 88, 206 P.3d 993 (reviewing for fundamental error a district court's failure to declare a mistrial on its own motion).

This Court exercises its discretion to employ the fundamental error exception "very guardedly" and will use it "only under extraordinary circumstances to prevent the miscarriage of justice." *See State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted). We will reverse a conviction based on fundamental error only if (1) "the defendant's guilt is so questionable that upholding [his] conviction would shock the conscience," or (2) "where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served. Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id*. (internal quotation marks and citation omitted). Defendant does not argue that his guilt is so

questionable that upholding his conviction would shock the conscience. Therefore, we look to whether a fundamental unfairness occurred at his trial that was sufficient to undermine judicial integrity and constitute a miscarriage of justice.

On the record before us, we cannot conclude that such an unfairness occurred. Although Defendant's interpreters stated that they believed their translation was not effective in assuring Defendant's linguistic presence at trial, the interpreters did not explain what facts supported their belief, and Defendant was not questioned about the issue. Therefore, there is simply no factual basis on which this Court can conclude that Defendant did not in fact understand the proceedings. It was defense counsel's obligation to present evidence to the district court so the court could make an informed determination about whether the interpretation provided was or was not adequate. *See State v. Cabodi*, 18 N.M. 513, 518, 138 P. 262, 263 (1914) ("[W]here it appears that the complaining party is aware at the time, that the interpretation of the evidence is not correct, it is incumbent upon him to call the court's attention to such erroneous translation and ask to have it corrected, and where he has not such knowledge at the time, but afterward becomes aware of the fact, he must set out all the facts in his motion for a new trial, pointing out therein specifically the evidence erroneously translated, and support such contention by affidavit or proof, so that the trial court can intelligently pass upon the question."); *State ex rel. Children, Youth & Families Dep't v. William M.*, 2007-NMCA-055, ¶ 41, 141 N.M. 765, 161 P.3d 262

6

("[A]s a constitutional matter, the appointment of interpreters and the existence of a language barrier are matters left to the discretion of the trial court."). Defendant did not seek such a ruling from the district court, and we cannot conclude that fundamental error occurred where, as here, there is no evidence that the translation provided did not in fact ensure Defendant's linguistic presence at trial.

Defendant argues that the interpreters' assertions that they were not able to communicate with Defendant were themselves sufficient to show that the proceedings were not translated in a manner that Defendant could understand. We disagree. Although the interpreters' statements might provide relevant evidence of Defendant's inability to understand, these statements were never actually introduced as evidence for the district court's consideration, since Defendant did not seek to have the district court make a factual determination about whether Defendant had understood the proceedings up until that point. *Cf. State v. Vallejos*, 118 N.M. 572, 578, 883 P.2d 1269, 1275 (1994) (prosecutor's unsworn statements in a hearing did not constitute competent evidence); *Archuleta v. Goldman*, 107 N.M. 547, 551, 761 P.2d 425, 429 (Ct. App. 1987) (stating that for purposes of establishing a dispute of material fact in summary judgment proceedings, statements in unsworn briefs are not evidence). Furthermore, even if the interpreters' unsworn statements constitute evidence that this Court may properly rely upon on appeal, the statements that Defendant was "having a hard time understanding" his interpreters, that "getting [Defendant] to understand

7

has been an ongoing problem," and that Defendant was "not fully able to participate in his defense" alone fail to demonstrate to this Court that Defendant was actually deprived of his right to be linguistically present. These statements simply indicate that the interpreters were of the opinion that Defendant did not understand the proceedings as much as the interpreters believed appropriate—a standard that might or might not be the same as any standard imposed under the law. In the absence of any explanation of what facts supported these conclusions or any evidence from Defendant himself about his comprehension, we are unwilling to rely on these statements alone as a basis for concluding that fundamental error occurred. The mere possibility that Defendant did not have a constitutionally adequate understanding of the proceedings is not sufficient to demonstrate the sort of prejudice required to show fundamental error. *See State v. Holly*, 2009-NMSC-004, ¶¶ 41-42, 145 N.M. 513, 201 P.3d 844 (finding no fundamental error where the defendant could not demonstrate actual prejudice); *State v. Nguyen*, 2008-NMCA-073, ¶ 18, 144 N.M. 197, 185 P.3d 368 (same), *cert. denied*, 2008-NMCERT-004, 144 N.M. 47, 183 P.3d 932.

To the degree that Defendant asserts that the interpreters' statements were sufficient to put the district court on notice that there may have been a problem, such that the district court was required to inquire further on its own, Defendant has not established that reversal is required on this basis. Defendant cites no authority to support his argument that when a defendant fails to ask the district court to make a

8

determination about whether interpreters have provided a legally adequate translation and there is no showing on appeal that Defendant did not in fact have a legally adequate understanding of the proceedings, reversal is required solely based on the district court's failure to sua sponte employ procedures—such as an evidentiary hearing—that might have determined whether the defendant's rights had or had not been protected. Even if, as Defendant asserts, a judge has an obligation to raise legal issues overlooked by the parties, we are unwilling to say that the district court's failure to do so in this case constitutes fundamental error requiring reversal. While we believe it would have been better for the district court to take a more active role in ensuring that Defendant had an adequate understanding of the proceedings, this alone does not demonstrate fundamental error on appeal. Defendant made no record below of any inadequacy in the interpretation or of any failure on his part to comprehend. Therefore, Defendant cannot demonstrate prejudice sufficient to constitute fundamental error.

Defendant claims that his inability to understand the beginning of his trial constitutes structural error. A structural error is one "that goes to the heart of the adversarial process," and is not subject to a claim of harmless error. *State v. Pettigrew*, 116 N.M. 135, 143, 860 P.2d 777, 785 (Ct. App. 1993). Even if we were to assume that Defendant's linguistic absence from court during the first part of his trial would constitute structural error, *cf. State v. Rodriguez*, 114 N.M. 265, 268, 837

9

P.2d 459, 462 (Ct. App. 1992) (stating that a defendant's involuntary absence from trial during crucial testimony might constitute structural error), for the reasons stated above, we cannot conclude from the record before us that Defendant was in fact linguistically absent. Therefore, there is no evidence to support Defendant's claim of structural error.

In the absence of a factual basis for the interpreters' opinions or any other factual evidence in the record, this Court cannot conclude that Defendant was unable to understand the first part of the trial. Accordingly, this issue is more appropriately raised in a post-conviction proceeding. *See State v. Gomez*, 112 N.M. 313, 315, 815 P.2d 166, 168 (Ct. App. 1991) (holding, in a similar case, where a defendant attacked the adequacy of the interpretation of the trial proceedings, that a post-conviction proceeding—rather than a direct appeal—was the most appropriate form of relief because of the absence of essential facts in the record).

**The Appointment of Defendant's Daughter as an Interpreter**

Defendant contends that the district court violated a number of state and federal statutory and constitutional provisions, and thereby committed reversible, fundamental, or structural error, in appointing Defendant's daughter to interpret the portions of his trial remaining after his interpreters refused to continue interpreting. Defendant asserts that his daughter was not certified, that she was sixteen, that she was unqualified, and that she was an interested party. Because Defendant agreed to

10

the use of his daughter as an interpreter and did not raise an argument in the district court that she should not be permitted to interpret for him, we review Defendant's claim only for fundamental or structural error.

Defendant developed no evidence below that his daughter translated anything inaccurately or that Defendant could not understand her. Accordingly, we find no fundamental error on the record before us based on any problem with Defendant's understanding of his daughter's interpretation. *See id*. To the degree that Defendant argues it is fundamental or structural error to permit a minor child who has not finished high school and has not been trained as an interpreter to interpret the criminal proceedings against her father, regardless of the accuracy of the child's translation, there is no evidence in the record regarding the daughter's age, education, or qualifications. This Court will not base its decision on evidence that is not of record. *See State v. Hunter*, 2001-NMCA-078, ¶ 18, 131 N.M. 76, 33 P.3d 296 ("Matters not of record present no issue for review.").

Although Defendant cites several cases for the proposition that an interpreter should be disinterested, the only cases he cites in which reversal was required based on the bias of an interpreter are cases in which the relations between the parties were such that the interpreter was likely to be biased against, rather than in favor of, the defendant. In this case, there was no evidence of record to suggest that Defendant's daughter was biased against him. To the degree that she was likely to have been

biased in his favor, Defendant has cited no authority that such bias warrants reversal. Therefore, the evidence presented to this Court on direct appeal demonstrates neither fundamental nor structural error. Defendant is always free to develop any relevant evidence he believes he may have and to present it in a post-conviction proceeding. *See Gomez*, 112 N.M. at 315, 815 P.2d at 168.

**The District Court Judge's Failure to Recuse Himself**

Defendant contends that fundamental error occurred at his trial when the district court judge failed to sua sponte recuse himself based on improper bias. Defendant does not argue that the judge's improper bias constitutes structural error. As Defendant is aware, "[i]n order to require recusal, bias must be of a personal nature against the party seeking recusal," and must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *State v. Ruiz*, 2007-NMCA-014, ¶ 15, 141 N.M. 53, 150 P.3d 1003 (internal quotation marks and citations omitted). In this case, Defendant asserts that it was fundamental error for the judge not to recuse himself after he made statements indicating that he had prejudged Defendant's guilt prior to trial. Defendant contends that

> Judge Hynes'[s] numerous statements to the effect that an interpreter was unnecessary as [Defendant] was clearly guilty required him to recuse himself because they demonstrate a bias existed *before* trial, *before* the judge made decisions regarding the sufficiency of the interpreter, and

12

before the judge made numerous other decisions that then *led* to conviction.

The comments that Defendant points to include the following exchanges, among others. On the original trial date, when Defendant's interpreters failed to appear, Judge Hynes seemed to believe that the trial might be able to take place without the interpreters, based on the weight of the facts against Defendant:

THE JUDGE: What's the defense?

MS. WHEELER: The defense is that he wasn't driving. His wife had driven there and his wife was going to drive back.

THE JUDGE: Well, what–can his wife–he was behind it, behind the wheel, the motor was running, he had a beer between his legs.

. . . .

MS. WHEELER: Yes.

THE JUDGE: So he's in actual physical control of the vehicle.

MS. WHEELER: That's up to a jury to decide.

THE JUDGE: No, but what's your defense to show that he wasn't?

MS. WHEELER: My defense was the only reason he turned on the car was because it was the first week of March and it was cold outside–

THE JUDGE: That's not a defense.

MS. WHEELER: –and snowing.

THE JUDGE: That's not a defense.

13

MS. WHEELER:   And he didn't drive there; he wasn't going to drive back.

THE JUDGE:        But he was in actual physical control of the car while he was–

MS. WHEELER:   If the jury decides he was, then yes.

THE JUDGE:        Well, let's let them decide. Why do we need an interpreter for that?

Trial counsel pointed out that Defendant would not be able to understand the proceedings without an interpreter, but this did not seem to present a concern for Judge Hynes:

THE JUDGE:        What does he need to know? What is he–is he going to testify?

MS. WHEELER:   It's his right to have a fair trial, and he may testify. He has a right to testify.

THE JUDGE:        Well, you want to get to that point, and if he's going to testify, I don't know.

MS. WHEELER:   Judge, he has a constitutional right to be present, to confront the witness–

THE JUDGE:        People have a right to be safe on the highway.

. . . .

MS. WHEELER:   . . . Judge, the point of trials is–I mean, the jury gets to make that decision.  You don't get to decide whether there's defenses or not.

THE JUDGE:        Well, I obviously don't and that's why we've got a jury here today to do that.

14

The judge made similar comments at trial (outside of the presence of the jury) when the interpreters expressed their concern that they were not able to communicate effectively with Defendant.

While we agree with Defendant that Judge Hynes's statements were objectionable, Defendant's argument seems to conflate the problem of bias with a very different problem—that Judge Hynes appeared to believe that if the facts as admitted by defense counsel seemed to weigh heavily against Defendant, due process protections were unnecessary. Judge Hynes's statements about the evidence were based on information obtained during the proceedings, not from some other source, and they do not reflect personal animosity against Defendant. *See id.* ¶¶ 15-17. Therefore, they do not reflect the sort of improper bias that requires recusal. *See id.* ¶ 19.

Although we conclude that Judge Hynes's statements did not demonstrate an improper bias, we caution the judge that his suggestion that a defendant's rights may be limited when the judge believes that the weight of the evidence is against him, is not supported by law and would tend to undermine the public's confidence in the fairness of the court system. A defendant has no obligation to present any defense at trial, as it is always the prosecution's burden to prove the defendant's guilt beyond a reasonable doubt. *State v. Sutphin*, 2007-NMSC-045, ¶ 11, 142 N.M. 191, 164 P.3d 72 ("[T]he Due Process Clause protects the accused against conviction except upon

proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (internal quotation marks and citation omitted)). The judge's comments about Defendant's lack of a defense appeared to improperly shift the burden at trial— although we note that these comments were not made in the presence of the jury, the judge properly instructed the jury on the burden of proof, and Defendant points to no evidence that the judge's opinion about the likely verdict on the undisputed evidence had any impact on the jury's determination in the case.

We recognize that many of Judge Hynes's statements seem to express the judge's pragmatic concern for what the judge thought to be Defendant's welfare: the judge believed that based on the undisputed evidence, a jury was likely to convict Defendant and that therefore any delay would not only postpone the inevitable, but would also force Defendant to suffer additional pretrial incarceration without good time credits. Nevertheless, the judge's suggestion that Defendant's constitutional and statutory rights to an interpreter could be curtailed based on these considerations was inappropriate, and we encourage Judge Hynes to be more circumspect in his comments.

**CONCLUSION**

Because Defendant has failed to present evidence on direct appeal to support his claim that fundamental or structural error resulted from the interpretation he

16

received at trial, we find no such error. Furthermore, as the evidence does not show that the district court judge was biased against Defendant, we find no fundamental error in the judge's failure to sua sponte recuse himself. Accordingly, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CELIA FOY CASTILLO, Judge**