This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41412**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ANTHONY PORRAS-GONZALEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**John P, Sugg, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}**    This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from a judgment and sentence entered by the district court adjudicating him guilty of one count of second degree murder and two counts of tampering with evidence. [3 RP 676] Defendant first argues there was insufficient evidence for the jury to convict him of one of the tampering with evidence charges that related to the disposal of bullets of the kind fired by the gun Defendant used to kill Briyan Alvarado (Victim) in this case. [BIC 5, 8]

**{3}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{4}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. Here, the district court instructed the jury that the State had to prove that (i) Defendant hid or placed ammunition; and (ii) by doing so, Defendant intended to prevent the apprehension, prosecution, or conviction for the crime of second degree murder. [3 RP 656] Defendant challenges both elements, contending there was insufficient evidence that he hid or placed the ammunition or that he had the requisite intent. [BIC 7-8]

**{5}** According to the brief in chief, there was testimony before the jury that Defendant shot Victim at a stoplight in Ruidoso while in the passenger seat of a vehicle. [BIC 2] Defendant's friend and the driver of the vehicle, Bryten Villa, then drove off. [Id.] Defendant disposed of the handgun in Devil's Canyon outside of Ruidoso. [BIC 3] Mr. Villa testified that he was aware Defendant normally kept the handgun in his room and assisted law enforcement in arranging a recorded call in which Defendant "made several incriminating statements about shooting [Victim] and items related to the handgun." [BIC 3] The ammunition was found in the trash can in Defendant's room along with documents related to the handgun, and the State introduced photos of the ammunition in the trash can. [BIC 4, 7] Police did not locate the ammunition in the bedroom until a third search of the residence and only after the call between Defendant and Mr. Villa. [BIC 7] During the call, Defendant "asked if the police had searched 'the trash and everything.'" [Id.] Defendant also stated: "Don't tell the cops anything." [BIC 9]

**{6}** We conclude that this was sufficient for the jury to find the necessary elements to convict Defendant of tampering with evidence. The jury could have reasonably inferred from the evidence that Defendant placed the ammunition from the firearm that had been used to kill Victim in the trash can in his room to avoid apprehension. *See State v. Ramirez*, 2018-NMSC-003, ¶¶ 14-15, 409 P.3d 902 (concluding there was sufficient evidence to connect the defendant to the murder weapon and to support his conviction

for tampering with evidence because the weapon was recovered "not far" from where police originally encountered the defendant and the weapon fired the same ammunition as the casings found at the crime scene).

**{7}**  Defendant next takes issue with three statements made by the prosecutor in closing. [BIC 10-14] All three statements occurred during the State's rebuttal. [BIC 10-12] First, the prosecutor told the jury to "take a breath" and "get back to reality as to what the evidence is." [BIC 10] Next, the prosecutor essentially told the jury that Defendant's counsel had acknowledged guilt as to the lesser charge of shooting at or from a motor vehicle, which was later vacated on double jeopardy grounds because the jury also convicted on second-degree murder. [BIC 5, 11] Lastly, in response to Defendant's counsel's statement that the State had failed to call a DNA expert, the prosecutor responded by telling the jury that neither party had requested a DNA expert. [BIC 12, 14]

**{8}**  As to the first statement, Defendant objected and the district court sustained the objection. [BIC 4] As to the other two statements, Defendant moved for a mistrial, but both times the district court denied the motion. [BIC 5] We review all three statements under an abuse of discretion standard. *See State v. Torres*, 2005-NMCA-070, ¶ 42, 137 N.M. 607, 113 P.3d 877 ("Because [the d]efendant objected to the statements, we review for abuse of discretion."); *State v. Henderson*, 2006-NMCA-059, ¶ 22, 139 N.M. 595, 136 P.3d 1005 ("We review the refusal of the trial court to grant [the d]efendant's motion for a mistrial for an abuse of discretion."). "We will find an abuse of discretion if a court's ruling is clearly untenable or contrary to logic and reason." *State v. Sena*, 2020-NMSC-011, ¶ 15, 470 P.3d 227 (internal quotation marks and citation omitted).

**{9}**  When reviewing error in closing arguments, we look to the following three factors: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense. *Id.* ¶ 16. As to the first factor, Defendant "acknowledges that the only statement that may invade a constitutional protection is the comment regarding neither party subpoenaing a DNA expert which implicitly shifted the burden by telling the jury that the defense did not present evidence." [BIC 12] In *State v. Pennington*, this Court held that a prosecutor's comment that the defendant "could have subpoenaed his own medical experts" did not shift the State's burden to the defendant. 1993-NMCA-037, ¶ 25, 115 N.M. 372, 851 P.2d 494. Instead, this Court interpreted the comment as targeting the defendant's failure to call witnesses who may have supported his theory of the case and concluded that "[s]uch comments are permissible." *Id.*; *see also State v. Estrada*, 2001-NMCA-034, ¶ 34, 130 N.M. 358, 24 P.3d 793 (concluding there was no prosecutorial misconduct "[b]ecause comments on the defendant's failure to produce witnesses are allowed"). Because *Pennington* is applicable to the State's comment regarding the DNA expert, none of these statements made during the State's rebuttal implicate a distinct constitutional protection.

**{10}**  "Absent a constitutional violation, we look at the length and repetition of the comment to determine whether it was so pervasive as to clearly distort the body of

evidence before the jury." *State v. Sosa*, 2009-NMSC-056, ¶ 38, 147 N.M. 351, 223 P.3d 348. We fail to see how the three comments were so pervasive as to clearly distort the body of evidence before the jury. The first comment explicitly directed the jury to consider the evidence. The second statement appears to just be a dispute over the semantics of Defendant's argument, which was that the jury should convict Defendant of the lesser offense *if* they thought he was the shooter. And the third was a statement of fact that neither party called a DNA expert. None of these three comments have anything in common with one another nor could any of them have been considered "a return to an impermissible theme from before." *Id.*

**{11}** Regarding whether these statements were invited, the first comment appears to have been a response to Defendant's closing statement in which Defendant attempted to implicate Mr. Villa as the shooter. [BIC 4] The second comment also appears to have been a response to a statement in Defendant's closing related to his theory of the case, albeit a mischaracterization of that theory. [BIC 11] Lastly, Defendant acknowledges that the comment concerning the DNA expert was in response to a statement made during Defendant's closing. *See id.* ¶ 33 ("[W]e are least likely to find error where the defense has 'opened the door' to the prosecutor's comments by its own argument or reference to facts not in evidence.").

**{12}** We note that, in addition to sustaining the first objection and denying the two motions for a mistrial, the district court instructed the jury to rely on their memories of the evidence after the second comment. *See State v. Torres*, 2012-NMSC-016, ¶ 8, 279 P.3d 740 ("Because the trial court is better able to gauge the magnitude of objectionable comments, we afford it broad discretion in choosing the appropriate way to respond."); *Sosa*, 2009-NMSC-056, ¶ 25 ("[A] trial court can correct any impropriety by striking statements and offering curative instructions. And should all the preceding safeguards fail, the trial court retains the power to declare a mistrial."). Consequently, after considering the three factors, we conclude that the district court did not abuse its discretion and appropriately handled the prosecutor's comments in the State's closing statement.

**{13}  IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**KATHERINE A. WRAY, Judge**